Van Voorhis, J.
At 309 N. Y. 88, in July, 1955, we reversed a judgment in favor of the defendant that had been entered upon an order of the Appellate Division, which in turn reversed a judgment in favor of plaintiffs entered upon a report by a Special Referee. A child (Sandra Levine) and her father had been awarded damages against the City of New York for personal injuries sustained when the infant plaintiff fell upon a jagged railing while playing a game in a public place. We held that the complaint had been incorrectly dismissed by the Appellate Division upon the law, and remitted the case for a determination of the questions of fact. That has been done by a resettled order of the Appellate Division, reversing the finding of the Referee that it was within the range of reasonable apprehension by the city that some accident of this *248 general character might occur to children playing there as a result of a defective and dangerous condition of the railing, which the city had allowed to exist for a period of years, and making the findings of fact and conclusions of law contained in its Per Curiam opinion of April 20, 1954. A memorandum decision was written by the Appellate Division in resettling its previous order, stating: “We regard the obligation of this court to be the resettlement of its order so as to set forth the findings of fact on which the prior decision of this court was based and not to consider the matter de novo. Accordingly, a resettled order will be signed containing the facts as found by this court in its Per Curiam opinion and reversing the findings of the Special Referee inconsistent therewith.” Plaintiff’s age was stipulated to have been about 10 years at the time of the accident.
Our prior holding was, as has been stated, that a question of fact 'was presented by the proofs at the trial. Chief Judge Conway’s opinion outlines the facts, which may be summarized as follows: On the day of the accident, October 21, 1947, the infant plaintiff and several of her companions were playing a game known as “ follow-the-leader ”. When her turn came to be the leader, the infant plaintiff climbed on top of a concrete post which had been built to support the iron railing which bordered the public walk leading to a stairway. The infant plaintiff next attempted to step down upon the top bar of this railing, but the bar or pipe ended in mid-air without reaching or being anchored in the side of the concrete post as it had been designed and originally constructed. It had rusted off and become bent, so that there was an open space between its jagged end and the place where it was supposed to have been fastened to the concrete post. There was evidence that this condition had existed during about six years prior to this accident. When this girl’s foot went into the gap between the jagged end of this railing and the concrete post, the end of the pipe impaled her left thigh, injuring her seriously.
The evidence discloses that this railing enclosed a rectangular plot of ground, with benches set against the railing. We said before that people were apparently invited by the city to congregate around this small enclosed plot of ground to rest and talk. “ Any child could clamber on these benches ”, the former opinion says, “ and climb over the railing into the enclosed *249 piece of ground. The railing itself could be expected to attract them, under these circumstances, for use as a variety of ‘ monkey bars.’ Evidence of children having played in this area was given in a deposition before the trial by a witness who had seen the accident. He stated that he had witnessed ‘ children in the vicinity of the railing prior to the occurrence of the accident ’, and that they played on the railing itself. This whole area, therefore, took on many of the characteristics of a public park or playground to which entire families are invited to come and enjoy themselves. Under such conditions, the city is under a greater duty of care than would be the case if there were no benches here, and if people were not expected and invited to congregate in this area with their children.”
Our opinion concluded by stating that if there had been no benches there and if parents and their children were not expected and invited to come there to rest, talk and relax, there might be no duty to children playing on the railing. Under the existing circumstances, however, we said that as matter of law it could not be held that a jury could not reasonably find that the city should have known of the dangerous condition and the hazard it posed to young children, or that by neglecting for six years to repair this railing the city did not breach a duty to those children and to this plaintiff.
Inasmuch as the Referee found in favor of plaintiffs, and the Appellate Division reversed his findings and found on the facts in favor of defendant, it becomes our function to decide which of these two factual theories should be adopted. In a crowded city children must play somewhere. This location was across the street from where the infant plaintiff lived. It was in a residential part of the city. These children could play more safely at this location than in the street, and the city made it into a sort of playground. Children are prone to climb on railings, and leaving the jagged end of a railing exposed which normally would be fastened into a concrete post might be expected to result in a dangerous condition. The Referee appropriately found that it was negligent for the city to have left it in this condition for six years. Also appropriate was his finding of absence of contributory negligence. The situation might be different in the country, where there are choices between many places in which to play. Here the children’s opportunities were restricted. In our view, the Referee’s findings are distinctly more probable.
*250 The judgment of the Appellate Division is reversed and the judgment entered on the Referee’s report reinstated, with costs in this court and in the Appellate Division. ■
Conway, Ch. J., Desmond, Dye, Fuld and Froessel, JJ„, concur; Burke, J., taking no part.
Judgment reversed, etc.