ADAM PAGAN, by His Mother and Natural Guardian Maria Pagan, et al., Appellants, v SANDOR GOLDBERGER, Respondent.

Second Department, April 26, 1976

*Gerwurz & Gerwurz (Seligson, Rothman & Rothman [Martin S. Rothman] of counsel), for appellants.*

*Harold M. Foster (William F. McNulty and Anthony J. McNulty of counsel), for respondent.*

HOPKINS, Acting P. J. The infant plaintiff, three years old, and his mother, bring this action to recover damages for an injury suffered by the infant and claimed to have been caused by the defendant's negligence. The defendant was the mother's landlord; she and her husband and seven children had occupied an apartment for three years. One of the employees of the landlord, acting under a complaint, removed the adjuster or knob from the radiator, thus exposing a sharp metal top on which the adjuster had been located. Though the

mother drew the attention of the landlord and his superintendent to the condition of the radiator, the condition was not remedied. Some five months later the mother, while in the kitchen, heard the infant scream and she found the infant lying on the floor with his face on the exposed sharp edge of the stem.

Trial Term dismissed the complaint at the end of the plaintiffs' case, on the ground that the plaintiffs had failed to prove both proximate cause and foreseeability as elements of the claim of negligence on the part of the defendant. We reverse and grant a new trial. The proof of proximate cause and foreseeability sufficiently raised issues for the determination of the jury.

Negligence as a legal concept traditionally includes both proximate cause and foreseeability as tests of liability. The common law recognizes fault as the primary ground of responsibility to another for injury; and proximate cause and foreseeability represent attempts to measure fault. In most cases the focus is directed on the kind of conduct which is claimed to have been injurious, and the jury is called upon to determine, upon varying evidence, what the nature of the conduct really was, and whether the injury really was sustained as a result of the conduct.

Nevertheless, unusual or freakish accidents occur, in which the defendant's conduct is not directly related in the continuum of time or space or personal status to the plaintiff's injury (see, e.g., *Palsgraf v Long Is. R.R. Co.,* 248 NY 339; *Matter of Polemis* [1921], 3 KB 560; *Overseas Tankship [U.K.] Ltd. v Morts Dock & Eng. Co.* [1961] A C 388). In these instances, the use of the test of proximate cause and foreseeability serves to place reasonable limits on liability as a matter of public policy (cf. *Ryan v New York Cent. R.R. Co.,* 35 NY 210, 217; *Homac Corp. v Sun Oil Co.,* 258 NY 462). As Holmes said (The Common Law, pp 93-96), an intolerable burden would be cast on human activity if every voluntary act was committed at one's peril.

The definition of proximate cause has been elusive; probably because the public policy underlying the concept cannot be described other than in general terms. Courts have attempted to find rational formulations for the rule of limitation of liability by resort to distinction between cause and condition, the "but for" test, or the relationship between principal and intervening causes (see Prosser, Law of Torts [4th ed], § 42, pp 244-249). All of these attempts have not been completely

satisfactory and Prosser, in the end, agrees with the observation of Street that proximate cause must "be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent." (Prosser, p 249, quoting from 1 Street, Foundations of Legal Liability, 110.)

The defendant draws our attention to the opinion of Mr. Justice JENKS in *Trapp v McClellan* (68 App Div 362) as a source for a reliable test of proximate cause. In that case the plaintiff was injured when his leg was caught in the mooring line attached to a cleat on a fireboat while he was trying to remove the line from the cleat. The defendant had fastened the line from its coal barge to the cleat. Mr. Justice JENKS held that the defendant's negligence in fastening the line had not been the proximate cause of the plaintiff's injury, because the starting of the fireboat was an intervening cause. In his view, the placing of the rope from the barge to the fireboat by the defendant was the *"cause sine qua non"*,[1] but the starting of the fireboat was the *"causa causans".*[2] These terms, as the footnotes indicate, are so general that they merely describe a result reached by the court.

Nor are we aided substantially by the test which Mr. Justice JENKS culled from *Insurance Co. v Boon* (95 US 117, 130): " 'It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster' " *(Trapp v McClellan,* 68 App Div 362, 367, *supra).* The defect in this test is readily apparent, since it does not obtain in all cases of several causes of an accident. "Although they acted independently of each other, they did act at the same time in causing the damages, etc., each contributing towards it, and although the act of each, alone and of itself, might not have caused the entire injury, under the circumstances presented, there is no good reason why each should not be liable for the damages caused by the different acts of all" *(Slater v Mersereau,* 64 NY 138, 146).

A case decided after *Trapp* illustrates the length to which the chain of proximate cause may be stretched (see *Matter of People [Guardian Cas. Co.],* 253 App Div 360, affd 278 NY 674). A taxicab collided with an automobile, as a result of which the taxicab was forced across the sidewalk and against

---

1. *Causa sine qua non:* "A necessary or inevitable cause; a cause without which the effect in question could not have happened." (Black's Law Dictionary [4th ed], p 278.)

2. *Causa causans:* "The immediate cause; the last link in the chain of causation." (Black's Law Dictionary [4th ed], p. 278.)

the stone stoop of a building. The taxicab became wedged between the stones composing the stoop. The claimant's wife, some 20 minutes after the collision, was viewing the scene in order to ascertain the damages sustained by the laundry operated by her and her husband on the premises struck by the taxicab. She was about 20 feet away, when a stone loosened by the impact fell while a policeman and others tried to extricate the taxicab. The stone hit the claimant's wife, causing her death. The court held that the negligence of both drivers was a proximate cause of the death.

The defendant, moreover, points to *Rivera v City of New York* (11 NY2d 856) as precedent for the dismissal of the complaint. In *Rivera,* an infant plaintiff, standing on the edge of a bathtub and attempting to reach a light cord, lost his balance and fell into hot water present in the tub, thereby receiving serious burns. The City of New York was alleged to have been negligent in failing to repair a leak in the hot water faucet and other defects in the plumbing, which resulted in the condition that scalding hot water accumulated in the tub. The Court of Appeals held (p 857) that the failure to repair was not the proximate cause of the accident, since the intervening act of the loss of balance of the plaintiff perched on the bathtub could not have been foreseen.

The decisions in other cases serve only as examples of the process whereby the concept of proximate cause is applied. The doctrinal sweep is so broad that a flexibility of approach, almost intuitive in nature, must be used. Some helpful guidelines emerge, not as overarching principles, but simply as tools of analysis:

1. The test of status—is there an existing legal relationship between the parties? In this case, the relationship of landlord-tenant, with the concomitant statutory overlay (see Multiple Dwelling Law, § 78) is present.

2. The test of temporal duration—is the occurrence of the injury tied to the claimed negligent act or omission within a reasonable lapse of time? In this case, the asserted negligent condition had endured an appreciable length of time, and it could be found that the injury occurred immediately upon contact with the condition.

3. The test of spatial relation—is the occurrence of the injury close or far in distance from the point of the claimed negligent act or omission? In this case, the injured infant plaintiff was found touching the asserted negligent condition.

4. The test of foreseeability—is the claimed negligent act or

omission reasonably predictable as a cause of the occurrence of the injury? In this case, the defendant was apprised of the presence of a small child in the household and had notice of the asserted negligent condition.

5. The test of public policy—is there an identifiable policy which either protects the victim of the injury or forbids liability for the injury? In this case, the interests or public policy are embodied in the statutory command that a landlord of a multiple dwelling should maintain the premises in good repair (Multiple Dwelling Law, § 78).

Surveying this case, in the posture in which it reaches us as an appeal from a dismissal of the complaint at the end of the plaintiffs' case, we think that the combined influence of the answers to the questions posed by the suggested guidelines leads us to the conclusion that the plaintiffs produced proof enough to go to the jury. Here, the fall of the infant plaintiff did not occur from an unusual circumstance, such as in *Rivera,* where the bathtub was being used as a platform to reach a greater height—a purpose foreign to its accustomed utility. Here, the fall of the infant plaintiff occurred while he was walking or running within the apartment. As the infant was three years old—one of seven children—the defendant, in his status as landlord, could reasonably expect that falls of infant occupants normally happen. To leave a sharp edge of a stem exposed, so that a person falling under these circumstances would be in a position to sustain injury, constituted conduct which the triers of the facts might find to be negligent, and the negligence so found to be so directly connected with the injury that the requirement of proximate cause is satisfied (cf. *Levine v City of New York,* 2 NY2d 246; *Daas v Pearson,* 66 Misc 2d 95, affd 37 AD2d 921). The issue of proximate cause is always difficult, open to the division of views, but we believe that *Rivera* is not controlling in this case (see, e.g., *Willis v Young Men's Christian Assn. of Amsterdam,* 28 NY2d 375, 379-380; cf. *Sherman v Concourse Realty Corp.,* 47 AD2d 134).

The judgment should therefore be reversed, and a new trial granted.

COHALAN, DAMIANI, CHRIST and TITONE, JJ., concur.

Judgment of the Supreme Court, Kings County, entered March 17, 1975, reversed, on the law, and new trial granted, with costs to abide the event. No fact findings have been presented for review.