█ HAROLD MARTINEZ, an Infant by His Mother and Natural Guardian, BLANCA MARTINEZ, et al., Respondents, v MURRAY LAZAROFF et al., Appellants.—In consolidated actions to recover damages for personal injuries, etc., defendants appeal from an order of the Supreme Court, Kings County, dated February 28, 1978, which denied their motion for summary judgment. Order reversed, on the law, without costs or disbursements, and motion granted. The issue to be decided in this personal injury case is whether the complaint should have been dismissed and summary judgment granted to defendants on the ground that the alleged conduct of defendants was not the proximate cause of the infant plaintiff's injuries, as a matter of law. Special Term, citing *Pagan v Goldberger* (51 AD2d 508), denied defendants' motion and held that the issue of proximate cause was for the jury. We disagree with the conclusion of Special Term. In our view, this is a case where "The range of reasonable apprehension is * * * a question for the court" *(Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 345) and we hold, as a matter of law, that the conduct of the defendants was not the proximate cause of the infant plaintiff's injuries. Since this case involves a motion by defendants for summary judgment, plaintiffs' allegations must be accepted as true. Plaintiffs commenced the instant action against the defendants Lazaroff and defendant Dunmar Realty alleging that they owned and managed 1720 Nostrand Avenue, Brooklyn, New York, wherein plaintiffs were tenants. They further alleged that defendants breached their duty to supply their tenants with hot water and that the infant plaintiff, Harold Martinez, sustained severe and permanent injuries due to defendants' violation of applicable codes, statutes, regulations and ordinances, and due to defendants' careless and negligent maintenance and management of the building. Specifically, plaintiffs alleged that approximately two weeks prior to the accident, the boiler in the apartment building broke down and no hot water was available to the tenants. The defendants had notice of the condition, but the boiler had not been fixed by May 3, 1975. During this two-week period, the infant plaintiff's father would heat a pot of hot water on the kitchen stove and carry it through the apartment to the bathroom to be used for cleanliness and sanitation. In the early afternoon of May 3, 1975, as the father was carrying the pot of boiling water past the door of his son's bedroom on his way from the kitchen to the bathroom, the infant plaintiff came out of the bedroom and collided with the pot. The pot tilted and hot water spilled onto the infant, seriously burning him. The instant action ensued. In contrast to the decision of Special Term, we are of the view that the principles of *Pagan v Goldberger (supra)* mandate a dismissal of the complaint. In *Pagan v Goldberger (supra),* a three-year-old infant was injured in his apartment when he fell against a piece of sharp metal on a radiator. The metal piece had been exposed when a knob on top was removed from the radiator by an employee of the landlord preparatory to repair. The landlord had knowledge of the condition for several months. The trial court dismissed the complaint at the close of plaintiffs' case on the ground that plaintiffs had failed to prove "both proximate cause and foreseeability as elements of the claim of negligence on the part of the defendant" *(Pagan v Goldberger, supra,* p 509). In reversing and granting a

new trial, this court, per Mr. Justice Hopkins, made the following introductory remarks regarding proximate cause *(Pagan v Goldberger, supra,* pp 509-510): "Negligence as a legal concept traditionally includes both proximate cause and foreseeability as tests of liability. The common law recognizes fault as the primary ground of responsibility to another for injury; and proximate cause and foreseeability represent attempts to measure fault. In most cases the focus is directed on the kind of conduct which is claimed to have been injurious, and the jury is called upon to determine, upon varying evidence, what the nature of the conduct really was, and whether the injury really was sustained as a result of the conduct. Nevertheless, unusual or freakish accidents occur, in which the defendant's conduct is not directly related in the continuum of time or space or personal status to the plaintiff's injury (see, e.g., *Palsgraf v Long Is. R. R. Co.,* 248 NY 339; *Matter of Polemis* [1921], 3 KB 560; *Overseas Tankship [U.K.] Ltd. v Morts Dock & Eng. Co.* [1961] A C 388). In these instances, the use of the test of proximate cause and foreseeability serves to place reasonable limits on liability as a matter of public policy (cf. *Ryan v New York Cent. R. R. Co.,* 35 NY 210, 217; *Homac Corp. v Sun Oil Co.,* 258 NY 462). As Holmes said (The Common Law, pp 93-96), an intolerable burden would be cast on human activity if every voluntary act was committed at one's peril. The definition of proximate cause has been elusive, probably because the public policy underlying the concept cannot be described other than in general terms. Courts have attempted to find rational formulations for the rule of limitation of liability by resort to distinction between cause and condition, the 'but for' test, or the relationship between principal and intervening causes (see Prosser, Law of Torts [4th ed], § 42, pp 244-249). All of these attempts have not been completely satisfactory and Prosser, in the end, agrees with the observation of Street that proximate cause must 'be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.' (Prosser, p 249, quoting from 1 Street, Foundations of Legal Liability, 110.)" To aid in the application of the concept of proximate cause where "The doctrinal sweep [of the decisions] is so broad that a flexibility of approach, almost intuitive in nature, must be used" *(Pagan v Goldberger, supra,* p 511), Mr. Justice Hopkins proposed the following guidelines as "tools of analysis" (pp 511-512): "1. The test of status—is there an existing legal relationship between the parties? * * * 2. The test of temporal duration—is the occurrence of the injury tied to the claimed negligent act or omission within a reasonable lapse of time? * * * 3. The test of spatial relation—is the occurrence of the injury close or far in distance from the point of the claimed negligent act or omission? * * * 4. The test of foreseeability—is the claimed negligent act or omission reasonably predictable as a cause of the occurrence of the injury? * * * 5. The test of public policy—is there an identifiable policy which either protects the victim of the injury or forbids liability for the injury?" In holding that the answers to these five tests were in plaintiff's favor, the court distinguished *Rivera v City of New York* (11 NY2d 856). In *Rivera,* an infant plaintiff standing on the edge of a bathtub and attempting to reach a light cord, lost his balance and fell into hot water present in the tub, thereby receiving serious burns. The City of New York was alleged to have been negligent in failing to repair a leak in the hot water faucet and other defects in the plumbing, which resulted in the condition that scalding hot water accumulated in the tub. The Court of Appeals held (p 857) that the failure to repair was not the proximate cause of the accident, since the intervening act of the loss of balance of the plaintiff perched on the bathtub could not have been foreseen. The court in

*Pagan* contrasted *Rivera* by stating *(Pagan v Goldberger, supra,* p 512): "Here, the fall of the infant plaintiff did not occur from an unusual circumstance, such as in *Rivera,* where the bathtub was being used as a platform to reach a greater height—a purpose foreign to its accustomed utility. Here, the fall of the infant plaintiff occurred while he was walking or running within the apartment. As the infant was three years old—one of seven children—the defendant, in his status as landlord, could reasonably expect that falls of infant occupants normally happen. To leave a sharp edge of a stem exposed, so that a person falling under these circumstances would be in a position to sustain injury, constituted conduct which the triers of the facts might find to be negligent, and the negligence so found to be so directly connected with the injury that the requirement of proximate cause is satisfied". In our view, the tests of *Pagan* cannot be uniformly answered in favor of plaintiffs herein as they were in *Pagan* and the complaint should have been dismissed, as a matter of law. In the case at bar, the child did not come into contact immediately with the dangerous or defective condition created by the landlord as the infant did in *Pagan.* The broken boiler was totally remote from the cause of the accident. Rather, it was the father's act in carrying scalding water through the apartment and the collision which must be considered the proximate cause of the injuries. This intervening act, which was an "unusual or freakish" accident (see *Pagan v Goldberger, supra,* p 509), could not be controlled or even reasonably foreseen by the defendants. In this regard, the carrying of the scalding water and the collision between the child and father was no more foreseeable than the intervening act of "the slipping of a wet boot while the child balanced on the curved edge of the bathtub" in *Rivera v City of New York (supra,* p 857). Under these circumstances, to hold that the instant accident was a foreseeable consequence of defendants' negligence "is to stretch the concept of foreseeability beyond acceptable limits" *(Ventricelli v Kinney System Rent A Car,* 45 NY2d 950, 952). Accordingly, the complaint should be dismissed. Latham, J. P., Damiani and Suozzi, JJ., concur.

Titone, J., dissents and votes to affirm the order, with the following memorandum: It is undisputed that Harold Martinez, the five-year-old plaintiff, his parents and brother were tenants in the building owned, operated and managed by the defendants. Also contained in the record on appeal is evidence that for approximately 15 months prior to the accident, there were recurring instances of defendants' failure to supply hot water to their tenants. As a result of their chronic inaction in that regard, and because of complaints made by tenants to the city's Housing and Development Administration, numerous violations were placed on the building by such agency. Some of the violations issued were nearly 15 months old at the time of the accident. With respect to this action, evidence was also adduced at the examinations before trial that about two weeks before the accident, the infant plaintiff's parents and other tenants in the building found it necessary to complain again to the defendants and the appropriate municipal authorities about the lack of hot water. According to the examination before trial of the boy's father, each day during the two-week period, as on the many prior occasions, he heated pots of water on the kitchen stove and carried them through the apartment to the bathroom for purposes of cleanliness and sanitation. As the majority indicates, on the day of the accident, May 3, 1975, at about 1:30 P.M., as the boy's father was carrying the pot of water past the door of his son's bedroom on his way from the kitchen to the bathroom, the child ran out of the bedroom and collided with the pot, causing the pot to tilt and the boiling water to spill onto the child.

As a result he suffered severe third degree burns on his face, neck, shoulder, back, chest, arm and thigh, as well as permanent scarring and functional deformity. For the purposes of the defendants' motion for summary judgment, the defendants admitted that the boiler in the building was broken at the time, that there was no hot water and that the individual defendants had notice of such condition. The law seems settled that to establish a prima facie case, a plaintiff is required to present facts and circumstances from which the negligence of the defendant and the causation of the accident may be reasonably inferred *(Cole v New York Racing Assn.,* 24 AD2d 993, affd 17 NY2d 761). While it is true that in many instances where unusual or freakish accidents occur, the use of the tests of proximate cause and foreseeability serves to place reasonable limits on liability as a matter of public policy *(Pagan v Goldberger,* (51 AD2d 508), it is generally agreed that a negligent act or omission is the proximate cause of all the natural and probable results of that act or omission. This does not necessarily mean that an act or omission does not constitute proximate cause unless the defendant could have foreseen the precise form of the injury, the particular manner in which it occurred, or that a specified person would be injured. It does mean that an act or omission is the proximate cause of the results complained of, if it could reasonably have been anticipated that an injury of the same general nature might occur (65 CJS, Negligence, § 109; cf *Hoggard v Otis Elevator Co.,* 52 Misc 2d 704, affd 28 AD2d 1207). A causal connection may be inferred where there is a logical connection between a violation of a statute or an ordinance and an ensuing injury *(Giminski v Irving,* 210 App Div 343; 65 CJS, Negligence, § 106). In the instant situation, defendants conceded both ownership and control of the building and their violation of subdivision 4 of section 77 of the Multiple Dwelling Law requiring an owner of a multiple dwelling to keep the plumbing system in good repair. Concomitantly, defendants also admit breaching their duty to plaintiffs in failing to provide them with hot water. Thus, I do not subscribe to the position taken by the majority that "The broken boiler was totally remote from the cause of the accident." In my opinion a jury, under these circumstances, could reasonably determine that defendants' failure to have the boiler repaired within a reasonable time after it was found to be out of order, (1) made it necessary that water be heated on the stove and carried to the bathroom in the apartment where the child resided for reasons of personal cleanliness and hygiene for members of the household, and (2) that the transporting of hot water through rooms in an apartment necessitated by the defendants' failure to repair the boiler, would expose children residing therein to the danger of hot water being spilled upon them. The rhetorical question that may be posed at this point is: in view of defendants' breach of a duty to keep the boiler in repair, what more logical, expedient, albeit dangerous, means, were available to the child's parents to provide hot water for the personal cleanliness of the members of the family during the two-week period in question, other than by heating water in a pot on the stove and then carrying it to the bathroom? An intervening cause set in operation by the original negligent act or omission which is a normal response to the stimulus of a situation created by such act or omission ordinarily will not relieve the original wrongdoer of liability *(Hoggard v Otis Elevator Co., supra;* Restatement, Torts 2d, § 443; 65 CJS, Negligence, § 111[5]). In its memorandum the majority bases its reversal, *inter alia,* on the determination of the Court of Appeals in *Rivera v City of New York* (11 NY2d 856). I believe *Rivera* and this case are patently distinguishable. In *Rivera,* the nine-year-old plaintiff, standing on the edge of a bathtub, wearing wet boots,

and attempting to reach a light cord, lost his balance and fell into hot water in the tub, thereby suffering serious burns. The landlord was alleged to have been negligent in failing to repair a leak in the hot water faucet and other defects in the plumbing which resulted in scalding water accumulating in the tub. The Court of Appeals held that the failure to repair was not the proximate cause of the accident, since the intervening act of the infant plaintiff's loss of balance on the bathtub could not have been foreseen. In this instance, the primary intervening act, namely the heating of the water by the infant plaintiff's father and the carrying of it to the bathroom for reasons of personal cleanliness, was a natural and plausible consequence of the boiler being out of commission and the resulting lack of hot water. Moreover, it could also be reasonably surmised that a child five years of age might walk or run into a person transporting scalding water some time during the two-week period that the tenants of the subject building were living under the intolerable conditions triggering the accident herein. By contrast, the accident in *Rivera* occurred by reason of the infant plaintiff using the bathtub to reach a greater height, a purpose foreign to its accustomed utility (see *Pagan v Goldberger, supra)*. Accordingly, I dissent and vote to affirm the order of Special Term denying defendants' motion for summary judgment.