OPINION OF THE COURT
John A. Monteleone, J.
On September 9, 1975, the plaintiff, Annie Nelson, was shot by prisoner Joseph James while he was under the custody of Correction Officers Connor and Motchan. Plaintiff was taken to Kings County Hospital for treatment including the removal of a bullet.
As a result, Mrs. Nelson sued the defendant, the City of New York, for negligence alleging that the correction officers failed to properly supervise prisoner James and on the further ground that Connor and Motchan failed to properly inspect the bathroom. Plaintiff also sued the defendant, New York City Health and Hospitals Corporation, for medical malpractice with respect to the treatment rendered to her subsequent to the shooting. This latter defendant conceded liability and the trial proceeded with respect to the issue of negligence relative to the defendant, the City of New York.
The jury returned a verdict of liability against the City of New York and made special findings that its employees, Correction Officers Connor and Motchan, failed to properly supervise prisoner James and also failed to adequately search the bathroom.
Subsequently, the jury returned a verdict in the total of $147,500. Mrs. Nelson was awarded $100,000 for personal injuries, including pain and suffering and $3,500 for loss of earnings against the City of New York, and $25,000 for personal injuries against the defendant, New York City Health and Hospitals Corporation. The husband plaintiff, Nathaniel Nelson, was awarded $4,000 for medical expenses and $15,000 for loss of services against the City of New York only.
At the end of the plaintiffs’ case and at the end of the entire case, the defendant, the City of New York, moved to dismiss the complaint on the ground that plaintiffs failed to prove actionable negligence as a matter of law.
There is no factual dispute with respect to this unfortunate occurrence. On the day in question, plaintiff Annie Nelson *311 brought her child to the dental clinic of Kings County Hospital for treatment. Prisoner James was brought to this same dental clinic for treatment.
Prisoner James was being held at the Atlantic Avenue detention pen on a murder charge. He had an extensive criminal record and was classified as dangerous and a high escape risk. Prisoner James had been previously brought to this dental clinic and was aware of its facilities including an adjoining public bathroom. Captain Earl Martin testified that he had escorted James on the visit prior to this shooting and that James had told him, "The next time, you better have the Marines.” The testimony reveals that James had been in contact with a Miss Singleton about two previous times at the clinic and that James had received a telephone call at the Atlantic Avenue detention facility on the morning in question before his leaving for the clinic.
Prisoner James was in custody of two correction officers at the clinic. Officer Motchan had leg irons attached as well as handcuffs. At the clinic James informed Motchan and Connor that he had to use the bathroom. Both officers were also aware that a woman had been in and out of the bathroom shortly before. Officer Connor testified that he and Motchan searched the bathroom and found nothing. They looked near the sink and behind the commode. No one was in the bathroom when Officer Motchan went inside with prisoner James. Officer Connor stayed outside since it was a small bathroom and he alone was armed. Thereafter, the bathroom door opened and Motchan came out first with James behind him. Connor was alerted since he testified that the prisoner should come out first. At that point Motchan shouted, "Watch it Joe, he has a gun”, whereupon James shot and killed Motchan. He also fired at Connor and as a result, the plaintiff Annie Nelson was injured. Officer Connor never fired his weapon since there were about 25 to 30 people in the waiting room and regulations prohibit shooting in public.
There was no direct testimony respecting the manner in which prisoner James came into possession of the gun in question. Miss Singleton was incarcerated as a result of this episode but could not be produced at court to testify because of a correction officers’ strike. The trial was delayed one day to permit the taking of her deposition but, as the record discloses, she refused to answer questions relating thereto. In any event, there was ample circumstantial evidence that the *312 gun in question was in the bathroom prior to James’ entrance to it.
The issue presented is whether the defendant, the City of New York, is liable for the negligent acts of its employees, Correction Officers Connor and Motchan.
A municipality is not liable for failure to perform a general protective governmental function (Sherwin Williams Co. v City of Port Jervis, 48 AD2d 711). Also, liability may not be imposed on municipalities for failure to enforce a statute or regulation unless a special relationship exists between the municipality and the particular class of individuals (Motyka v City of Amsterdam, 15 NY2d 134, 139; Sanchez v Village of Liberty, 42 NY2d 876; Brady v Consolidated Edison Co. of N. Y., NYLJ, April 17, 1979, p 7, col 3). It has also been held that when a municipality acts in its governmental capacity for the protection of the general public it cannot be cast in damages for a mere failure to furnish effective protection to a particular individual to whom it has assumed no special duty (Steitz v City of Beacon, 295 NY 51; Murrain v Wilson Line, 270 App Div 372, affd 296 NY 845; Spiegler v School Dist. of City of New Rochelle, 39 Misc 2d 720, affd 19 AD2d 751).
On the other hand, when a municipality does some affirmative act which causes the injury, or which sets in motion a chain of events leading to the injury, a special duty may arise and liability may follow even when the municipality is performing a governmental function. (Schuster v City of New York, 5 NY2d 75; Lubelfeld v City of New York, 4 NY2d 455.)
The defendant strongly urges this court to dismiss the complaint on the ground that public policy precludes liability. In Williams v State of New York (308 NY 548), a prisoner escaped from a prison farm under conditions of minimum security. By use of force, threats and duress, the escaped prisoner compelled a local farmer to drive him in attempting to perfect his escape. As a result of the afore-mentioned "force, threats and duress” and "emotional stress” the farmer sustained a hemorrhage of the brain from which he died the next day (pp 552-553). In dismissing the complaint the Court of Appeals found that there was nothing in the prisoner’s record, his psychiatric history or his prison experience that gave any indication that he was likely to wander from the prison and assault members of the public. The court added (p 556), "All things considered, it can hardly be said that the State owed a duty to members of the public to protect them *313 from the risk of exposure to such a man.” It was in this light that the court held that public policy precluded liability on the part of the State. It referred to experimentation of wardens with minimum security work details in order to encourage "better-risk prisoners to exercise their senses of responsibility and honor and so prepare themselves for their eventual return to society.” (Williams v State of New York, supra, p 557.)
This court finds that the Williams case is distinguishable and not applicable. The background of prisoner James is in sharp contrast since he was classified as dangerous and a high escape risk. Certainly his warning that upon his next visit to this dental clinic, "you better have the Marines”, placed the defendant on notice of his vicious propensities coupled with his extensive criminal background. Another distinguishing feature is, that at the time prisoner James was brought to the clinic, he was being held in restraint. This prisoner had two sets of handcuffs in place. One set cuffed his hands; another set handcuffed him to Officer Motchan and in addition leg chains were annexed to him and Motchan. Officer Connor was armed and also supervised this prisoner as he was led into a public waiting room. These circumstances are analogous to the court’s reference to the consequences of a breach of duty by the State to protect others from the acts of the mentally ill confined to State institutions in Williams v State of New York (supra). In the cases cited, including Scolavino v State of New York (297 NY 460), etc., the duty or obligation upon the governmental agency revolves upon whether the confinement is in the nature of punishment or of restraint. There is no question that prisoner James was being held in restraint when brought into this public dental facility. Under these facts and circumstances, a special duty was owed to the plaintiff Annie Nelson which was breached by the defendant. It not only was negligent in its supervision of prisoner James, but additionally the defendant breached its affirmative duty in inspecting the bathroom and in failing to do so in a proper and reasonable manner.
Additionally, this shooting and the subsequent injuries to Mrs. Nelson would not have occurred, except for the failure of Officers Motchan and Connor to locate the gun in the bathroom.
The issues of proximate cause and foreseeability were given to the jury and it is implicit by its verdict that the jury found *314 that the ultimate act of shooting by prisoner James should have been foreseen by the defendant as a reasonably prudent person under the circumstances. (Pagan v Goldberger, 51 AD2d 508; Matter of People [Guardian Cas. Co.], 253 App Div 360, affd 278 NY 674.)
Accordingly, all of the defendant’s motions made at the end of the plaintiffs’ case and at the conclusion of the trial, including the motion to set aside the verdict, are denied.