RICHARD GREAVES, an Infant, by His Mother and Natural Guardian, ADRIENNE GREAVES, et al., Respondents, v BRONX Y.M.C.A., Appellant.

First Department, June 24, 1982

**APPEARANCES OF COUNSEL**

*Harvey J. Lippman* of counsel (*Norman S. Goldsmith* and *Shari B. Rubin* with him on the brief; *Jones, Hirsch & Bull,* attorneys), for appellant.

*Philip Hoffer* of counsel (*Rose Hoffer, Frank J. Giordano* and *Harold Weisman* with him on the brief; *Frank J. Giordano, P. C.,* attorney), for respondents.

**OPINION OF THE COURT**

SANDLER, J.

Defendant appeals from a judgment for the infant plaintiff after a jury trial in an action for damages sustained when the plaintiff, then nine years old, was a camper at defendant's camp. The jury, evaluating the damages as $250,000, found the defendant to be 60% negligent and the plaintiff 40% negligent. Following the trial court's determination that the damages awarded were excessive, plaintiff consented to a reduction to $150,000, resulting in a net verdict to the plaintiff of $90,000.

From the evidence presented by the plaintiff, the jury could reasonably have concluded that he sustained a severe injury to his elbow when he fell during the course of a

game of ring-a-levio; that both campers and counselors participated in the game, the counselors as a separate team of "catchers"; that the game was played on a sloping grass area adjacent to a swimming pool; that the plaintiff slipped on a section of the grass that was damp as a result of water spilling over from the pool and the counselors having previously hosed the campers when they had emerged from the pool.

The principal issue presented on this appeal is the legal sufficiency of the evidence, the defendant contending that the case is controlled by the decision in *Sauer v Hebrew Inst. of Long Is.* (17 AD2d 245, affd 13 NY2d 913) in which, in a similar factual situation, a verdict in favor of the plaintiff was reversed, on the law and on the facts, and the complaint was dismissed.

As described in this court's decision in *Sauer* (*supra*), the plaintiff in that case, then 13 years old, was injured at a summer camp while playing a game supervised by the defendant's personnel. The game was a "water fight" between groups of campers of similar age, played on a grass-covered area in which opposing groups of boys doused each other with water from cups or water pistols. Running away from an opponent, the plaintiff in *Sauer* slipped on the grass and struck his head on a concrete walk on the side of the grass area.

In reversing a verdict after a nonjury trial in favor of the plaintiff, the court said (at p 246): "The defendant, as the operator of a camp for boys, could not reasonably be made responsible in damages for the consequences of every possible hazard of play activity. It was required, rather, to guard against dangers which ought to have been foreseen in the exercise of reasonable care".

Further on in the opinion, the following was said (p 246): "To impose liability in this situation is to interdict the game itself, which in turn would so sterilize camping activity for boys as to render it sedentary."

Recognizing the similarity of this case to the situation in *Sauer* (*supra*), we are not persuaded that *Sauer* is dispositive. The effect here of finding the evidence legally sufficient to support the jury's verdict would not be "to interdict

the game itself". At issue here is not the appropriateness of the game that was played for the youngsters involved, but rather the judgment of the supervising counselors in selecting for the playing of the game a surface that might reasonably have been foreseen as adding needlessly to the risks inherent in the game itself.

It is appreciated that difficult problems of judgment may often confront counselors supervising the play activity of youngsters accustomed to strenuous physical exertions often accompanied by actions that involve some degree of risk. We appreciate the concern that a finding of liability in some camp situations may tend to "sterilize camping [activities] for boys as to render it sedentary." On the facts which the jury might reasonably have found in this case, however, we believe that a factual issue for jury determination was presented as to whether the playing of the game here on the described surface involved a foreseeable risk of unjustifiable danger. (See *Quinlan v Cecchini*, 41 NY2d 686, 689.)

Accordingly, the judgment of the Supreme Court, Bronx County (CALLAHAN, J.), entered on December 12, 1980, after a jury trial in favor of plaintiff for $90,000 should be affirmed.

FEIN, J.

*Sauer v Hebrew Inst. of Long Is.* (17 AD2d 245, affd 13 NY2d 913) is distinguishable. The boys involved there were shooting water pistols at each other, an activity which would obviously make the ground on which the game was being played wet and slippery. So far as appears in *Sauer*, the camp counselors did not participate in the activity so that if liability were found, it would be grounded on lack of adequate supervision only.

In *Sauer*, this court stated (17 AD2d, at p 246): "To impose liability in this situation is to interdict the game itself, which in turn would so sterilize camping activity for boys as to render it sedentary." In our case the game was ring-a-levio, a kind of roughhouse run-hide-and-chase game in which the counselors participated as a team of "catchers" who actively chased the campers until they were caught and brought to home base. There is a basis for finding misfeasance by defendant's employees.

There is a further ground for distinguishing *Sauer*. The game here was played on a wet, sloping, grassy area adjacent to the swimming pool. It is plain that there are dangers in the game of ring-a-levio as there are in most sports, and they are not to be interdicted on that ground alone. However, the problem here is not basically with the game but rather with the place where it was being played, a wet, sloping, grassy area adjacent to the swimming pool. The issue is whether this was a proper place for such a game.

It is undisputed that there was a football field a short distance away on the campgrounds which would have been appropriate for the game.

In the language of *Sauer* (*supra,* p 246), it was not necessary "to interdict the game itself"; it was necessary only to use reasonable care to insure that it was played in an area which did not add to its inherent risks. This is not to make children's camping activities little more than a baby-sitting operation, as the dissent suggests. The risks of childhood are always there. Supervisory responsibility is to avoid unreasonably adding to such risks. Surely if the game of football were being played in an area such as was utilized here, instead of on the available football field, one would have little hesitancy in finding that there was at least a jury issue as to whether there was actionable negligence. After all, we are dealing with a nine-year-old boy. Each game has its own dangers. However, adding to the danger of allowing the game to be played in an inappropriate location may be negligence, a foreseeable risk of the probability and the gravity of harm.

Thus, in *Eddy v Syracuse Univ.* (78 AD2d 989) the game was "ultimate frisbee", played between two college teams. The game was played in a gymnasium, one wall of which was of masonry construction with glass doors. Plaintiff, in running toward that wall and looking back over his shoulder for a thrown frisbee, was unable to stop before striking one of the doors. Plaintiff's upper torso went through the door and he was severely lacerated. The defendant contended that it did not authorize use of the gym, had no foreknowledge of its use by plaintiff, could not foresee the manner in which it would be used, and finally that the gym

was not defective in construction or design nor unsuited for its ordinary purposes, such as basketball. The court held: "Thus the question arises of whether defendant should have foreseen that students might use the gymnasium for the playing of games other than those for which the basketball courts had been laid out. Here again, because of the propensity of college students to engage in novel games, a jury question was presented, and if such foreseeability was found, the probability and gravity of harm was readily apparent. The jury could also reasonably have found that the risk presented by the glass doors could have been obviated without imposing an undue burden upon defendant." (*Eddy v Syracuse Univ.*, 78 AD2d, at p 991.)

So too here it was properly a jury question whether the risk presented by participating in and allowing ring-a-levio to be played on a wet, sloping, grass-covered area adjacent to the pool presented a foreseeable risk of danger which could have been obviated by having the game played at some other portion of the campgrounds, to wit, the nearby athletic field. The duty of youth camps to the children entrusted to their care is well settled (*Willis v Young Men's Christian Assn. of Amsterdam*, 28 NY2d 375). Although we now have only one standard of care, consideration of "who plaintiff is and what his purpose is upon the land are factors" in determining "what would be reasonable care under the circumstances." (*Basso v Miller*, 40 NY2d 233, 241.) Here we have a nine-year-old camper and his peers obviously needing supervision.

Implicit in the jury's verdict was a finding that the defendant had a duty, which was breached, to protect the youthful campers from the dangers involved in playing the game on an unsuitably, wet, sloping, grassy area.

The duty of care owed to the nine-year-old plaintiff was measured by the "risk of harm reasonably to be perceived * * * reasonable care under the circumstances whereby foreseeability shall be a measure of liability." (*Basso v Miller*, 40 NY2d, at p 241.)

In determining whether there is sufficient evidence to support a negligence finding to submit to a jury, the question is whether the foreseeability of risk is too remote. The court must examine the facts and weigh "the probabil-

ity of the harm, the gravity of the harm against the burden of precaution, and other relevant and material considerations from which it can determine whether reasonable persons can differ as to whether the defendant was negligent" (*Quinlan v Cecchini,* 41 NY2d 686, 689). Only when it is concluded that there is no reasonable view of the evidence upon which to assess liability is the question one of law. Where varying inferences are possible as to what is foreseeable and what is negligence, the issue is for the jury (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315; *Palsgraf v Long Is. R.R. Co.,* 248 NY 339, 345).

On the facts of this case, reasonable persons can differ as to whether the defendant was negligent. Hence the jury's verdict should stand.

The spectre of entirely curtailing camp activities, sought to be avoided by the *Sauer* court whose decision is relied upon by the dissent, should not be allowed to bar liability if a properly instructed jury could find, as this one did, that there was a foreseeable risk of danger or harm which was a proximate cause of the accident and which in the exercise of reasonable care, under the circumstances, could have been avoided by having the game played on a more appropriate and plainly available site. It was not necessary to anticipate the particular occurrence in order to find negligence. It was enough if there was danger of harm with foreseeable consequences. (*Derdiarian v Felix Contr. Corp.,* 51 NY2d, at pp 316-317; see *Pagan v Goldberger,* 51 AD2d 508; *Willis v Young Men's Christian Assn. of Amsterdam, supra.*) Although the case may be close to *Sauer (supra),* it is not the same case. The "idiosyncratic nature of most tort cases" makes it appropriate to leave the issue to the jury because "in the determination of issues revolving about the reasonableness of conduct", the role of the jury is significant (*Havas v Victory Paper Stock Co.,* 49 NY2d 381, 388).

Accordingly, the judgment of the Supreme Court, Bronx County (CALLAHAN, J.), entered on December 12, 1980, after a jury trial in favor of plaintiff for $90,000 should be affirmed without costs.

BLOOM, J. (dissenting). In August, 1976, plaintiff, then nine years of age, was enrolled in a summer day camp

operated by defendant. On the day in question, plaintiff, and the others participating in the day camp, were at the Castle Hill Beach Club. In the late afternoon the campers emerged from the club pool. Their evening activity was to go to a Yankee baseball game. As they exited from the pool they were hosed down in accordance with the usual custom. They then dressed and had a typical camp supper consisting of hot dogs and hamburgers grilled at a barbecue pit. Since there was time to spare before they proceeded to the Yankee Stadium the campers and counselors engaged in a game of "ring-a-levio". The team of chasers consisted of three or four counselors while the team of those chased consisted of campers.

As the chase proceeded, plaintiff, who was dressed in jeans, a shirt, socks and sneakers, fell and injured his arm. He was taken to a hospital where it was ascertained that his elbow was broken. The arm was placed in a cast and plaintiff remained in the hospital for five days. Within three months the arm had healed and since that time plaintiff has actively engaged in athletics.

Thereafter this action was brought. It is bottomed on the claim that the "ring-a-levio" chase took place in an area surrounding the pool and that the defendant was negligent in permitting the game to be played in the vicinity of the pool. Plaintiff's fall, it is contended, resulted from the chase, during which he slipped on wet or damp grass. The jury returned a verdict in favor of the plaintiff in the sum of $250,000, and allocated 60% of the negligence to defendant and 40% to the infant plaintiff. Defendant thereafter separately moved for judgment notwithstanding the verdict and to reduce the verdict. The trial court denied the first motion from the Bench. It reserved decision on the second motion and, in a memorandum decision subsequently rendered, reduced the verdict to the sum of $150,000, leaving the apportionment as the jury had found it. It held "the total verdict in favor of the infant plaintiff to be shockingly excessive and to be in large part based on sympathy". From the judgment entered thereon defendant appeals.

We are of the opinion that this case is governed by our holding in *Sauer v Hebrew Inst. of Long Is.* (17 AD2d 245,

affd 13 NY2d 913). Accordingly, we would reverse and dismiss the complaint. In *Sauer* the plaintiff was a camper at defendant's summer camp. The campers were engaged in a game of "waterfight" in which the contending teams sought to douse their adversaries with water from cups or water pistols. Plaintiff, in an endeavor to avoid being sprayed with water, ran from an opponent. In so doing he slipped on the wet grass and struck his head on a concrete area immediately adjacent to the wet grassy area on which he slipped. In exonerating the defendant from liability we noted (p 246):

"The defendant, as the operator of a camp for boys, could not reasonably be made responsible in damages for the consequences of every possible hazard of play activity. It was required, rather, to guard against dangers which ought to have been foreseen in the exercise of reasonable care * * *

"It has not been demonstrated that the water fight game was more hazardous than any ordinary camp activity involving running. It was inevitable in the game that the grass would become wet; and, indeed, in any such game among 13-year-old boys, that there would be tumbles and falls whether it was wet or dry.

"To impose liability in this situation is to interdict the game itself, which in turn would so sterilize camp activity for boys as to render it sedentary".

We do not read *Eddy v Syracuse Univ.* (78 AD2d 989) as requiring a different result. There the plaintiff was a participant in the game of "ultimate frisbee" which was played in defendant's gymnasium, one wall of which was of masonry construction with a glass door in the center. The two teams had been admitted to the gymnasium by the janitor who, after their admission, had locked the door. There was no proof that the janitor had authority to permit the frisbee teams to use the gymnasium. Plaintiff, while pursuing a thrown frisbee, ran toward the glass door. As he neared the door, he turned and observed it. Unable to stop, he put up his hand to grasp the handlebar across the door. Because it was locked, the glass was shattered and plaintiff's right arm was severely lacerated. Defendant argued,

among other things, that it had not given the players authorization to use the gymnasium and, hence, it was not liable. In holding the defense unavailable the court noted the change wrought in the law by *Basso v Miller* (40 NY2d 233). In the context of the defense, it made foreseeability the criterion by which defendant's duty was to be measured. However, as *Sauer* (*supra*) makes plain, that issue is not present in the case before us. The falls and tumbles of a nine year old at play are an inherent risk of any physical, competitive game. Only by forbidding the game can the risk be guarded against. However, to interdict such games is to make children's camping activities little more than a "baby-sitting" operation. Much as the law devotes itself to the protection of children it is powerless to protect them against childhood itself.

FEIN and ASCH, JJ., concur in the opinion of SANDLER, J.; SANDLER and ASCH, JJ., concur in the opinion of FEIN, J., both of which constitute the opinions of the court; MURPHY, P. J., and BLOOM, J., dissent in an opinion by BLOOM, J.

Judgment, Supreme Court, Bronx County, entered on December 12, 1980, affirmed.