*933 OPINION OF THE COURT
Stephen J. Mignano, J.
This claim arises from a July 30, 1997 incident in which a prison inmate escaped from a bus while being transported from one correctional facility to another and carjacked the claimants’ car. The trial was bifurcated and this decision deals only with the issue of liability.
At trial, the evidence established that on July 30, 1997 a Department of Correctional Services (hereinafter DOCS) bus, driven by a civilian employee of DOCS, was transporting inmates on a scheduled trip from Ulster Correctional Facility to Eastern Correctional Facility, Fishkill Correctional Facility, Downstate Correctional Facility, Shawangunk Correctional Facility, Sullivan Correctional Facility and then back to Eastern and Ulster. When the bus left Ulster there were 14 inmates and a security detail of two correction officers (hereinafter C.O.s), C.O. John Smith and C.O. Glenn Yark, on board. At about 8:20 p.m., when the bus left Downstate, there were 15 inmates on the bus (see exhibit 9). At about 9:15 p.m., when the bus left Shawangunk, there were 14 inmates on the bus (see exhibit 8; see also exhibit 9). From Shawangunk, the bus traveled to Sullivan. When it arrived at Sullivan, the C.O.s discovered there were only 13 inmates on the bus (see exhibits 9, 10). One inmate, Eron Seeley,* had escaped.
On July 31, 1997, after his capture, Mr. Seeley was interviewed by a member of the Inspector General’s staff. The report of interview was received into evidence as exhibit 13. The report relates that Mr. Seeley boarded the bus at Downstate for transport to Sullivan. Mr. Seeley stated that the C.O.s put the handcuffs and chain on him loosely enough that he could free his hands. When the bus left Shawangunk for Sullivan, the bus driver extinguished the inside lights. About 10 minutes after leaving Shawangunk, the bus stopped for a red light and Mr. Seeley climbed through the window. When the light turned green and the bus began moving, Mr. Seeley dropped down to the ground. He stated he did not have a handcuff key.
Ellen Leonido testified at trial that on July 30, 1997 she and her two children had dinner at her fiancé’s house and were driving home when she stopped at Sheeley’s Car Wash on Route 208 in Walden to have the car washed (see exhibit 1). Ms. Leonido stated that she pulled into the second bay and then pulled *934 out to get quarters from the coin machine just outside the bay (see exhibit 2). She said her son, Christopher, got out of the car, then jumped back into the front seat and threw the paper money. She then saw a man with dreadlocks pull Christopher out of the car. The man was screaming at her to get out of the car and to get her daughter out of the back seat. The man, who she later learned was Eron Seeley, entered the car on the passenger side and climbed over to the driver’s seat. Ms. Leonido stated that her daughter, Nicole, was just out of the car when Mr. Seeley drove away, with the back door still open. Ms. Leonido and her children then ran across the street to a house and called the police.
The transcripts of the depositions of C.O. John Smith (exhibit 6) and C.O. Glenn Yark (exhibit 7) were admitted into evidence. The C.O.s knew that one of them had cuffed and shackled Mr. Seeley before he entered the bus; however, neither could remember which one. Both C.O.s also stated that they were not advised by DOCS that Mr. Seeley was a potential escape risk or was a high-risk prisoner. They stated that if he was so considered, they would have been informed of that fact.
The testimony of C.O. Smith and C.O. Yark establishes that they did not fully comply with DOCS Directive 4906, entitled “Transfer of Inmates” (exhibit 14). It appears that they did not comply with paragraph II (C) (9) (f) requiring that once inmates are seated on the bus, all restraints should be inspected, and paragraph II (F) (9) requiring that during a trip, the restraints on the inmates should be inspected frequently.
In order to establish a prima facie case of negligence, a party must demonstrate, inter aha, a breach of a duty owed by the alleged tortfeasor (Cossano v State of New York, 129 AD2d 671 [1987]). As the Appellate Division, Second Department, stated in Cossano (supra at 671-672):
“It is well settled that public entities are ‘immune from negligence claims arising out of the performance of their governmental functions, including police protection, unless the injured person establishes a special relationship with the entity, which would create a specific duty to protect that individual, and the individual relied on the performance of that duty (see De Long v County of Erie, 60 NY2d 296, 304; Florence v Goldberg, 44 NY2d 189, 195; Riss v City of New York, 22 NY2d 579, 583; Motyka v City of Amsterdam, 15 NY2d 134, 139; Bass v City *935 of New York, 38 AD2d 407, 413, affd . . . 32 NY2d 894)’ (Miller v State of New York, 62 NY2d 506, 510).”
In his opening statement to the court, claimants’ counsel recognized the State’s immunity in providing police protection, but asserted a special duty sufficient to remove this matter from the immunity shield. Despite a valiant effort, the court finds that claimants failed to establish, by a preponderance of the evidence, that such special relationship existed.
Protecting society by removing persons who commit criminal acts from the community and placing them in appropriate facilities is a uniquely governmental function. Whether the placement is in an adult prison or a juvenile facility, the governmental function is the same, protection of the community (Sebastian v State of New York, 250 AD2d 260 [1998], affd 93 NY2d 790 [1999]). The same governmental function analysis applies to the transport of persons who commit criminal acts.
The elements of a “special relationship” are: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality’s agents that inaction could lead to harm; (3) some form of direct contact between the municipality’s agents and the injured party; and (4) that party’s justifiable reliance on the municipality’s affirmative undertaking (Cuffy v City of New York, 69 NY2d 255, 260 [1987]; see Shinder v State of New York, 62 NY2d 945, 946 [1984]; see also Sorichetti v City of New York, 65 NY2d 461, 469 [1985]).
The evidence presented by claimants did not establish any of these elements. The decision relied on by claimants, Nelson v City of New York (100 Misc 2d 309 [1979]), is factually dissimilar from the case at bar. In addition, Nelson (supra) seems to go against the weight of established precedent. Here, the C.O.s failed to properly perform their duty of “care, custody and control” of Mr. Seeley, but this general duty is for the benefit of the public as a whole and not for the claimants individually.
Based upon the foregoing, the court concludes that the defendant is accorded immunity from liability for inmate Seeley’s escape from the DOCS bus and the carjacking of claimants’ vehicle. The court is in no way unsympathetic to the psychological trauma the claimants have sustained; however, I am constrained to apply the law as it exists. The claim is hereby dismissed.

 Mr. Seeley is now deceased.