[969 NE2d 197, 946 NYS2d 81]

JILL WILLIAMS et al., Respondents, v STATE OF NEW YORK, Appellant.

Argued March 21, 2012; decided April 26, 2012

### APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General,* New York City (*Cecelia C. Chang, Robert C. Weisz, Benjamin N. Gutman* and *Barbara D. Underwood* of counsel), for appellant.

*McGarry & Simon,* New York City (*William A. Simon* of counsel), for respondents.

*Mental Hygiene Legal Service, First Judicial Department,* New York City (*Marvin Bernstein* and *Sadie Ishee* of counsel), and *Mental Hygiene Legal Service, Second Judicial Department,* Mineola (*Lesley M. De Lia, Lisa Volpe* and *Dennis B. Feld* of counsel), for Mental Hygiene Legal Service, First Judicial Department and another, amici curiae.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, the judgment of the Court of Claims reinstated and the certified question answered in the negative.

On July 25, 1993, while escorted by a mental health therapy aide to one of the chapels on the grounds of the Manhattan Psychiatric Center (MPC), Tony Joseph (Joseph), a voluntary patient, stole away when the aide permitted him to use a bathroom out of her sight. MPC, which is operated by the State of New York's Office of Mental Health (OMH), is a nonsecure civil facility located on Ward's Island in New York City. The aide contacted MPC security personnel when she realized that Joseph was missing, and staff members and safety officers searched for him on Ward's Island to no avail. Under OMH policies in place at the time, MPC classified Joseph as "left without consent" (LWOC), denoting an assessment that he was nondangerous and did not meet certain other criteria, rather than "escaped," which would have required the hospital to contact the police for assistance in locating him.

Nearly two years later, on July 7, 1995, Joseph threw a glass bottle at claimant Jill Williams (Williams), while she was waiting to cross Riverside Drive on the Upper West Side of Manhattan. The bottle hit her lower right leg, fracturing the tibia, and she underwent two surgeries. Joseph was convicted of first-degree assault for the attack, and was sentenced to 4 to 8 years in prison. Williams and her husband (collectively, claimants) subsequently brought this negligence action against the State. In an amended claim dated November 12, 1996, they alleged that the State negligently supervised Joseph, who had a history of violence, particularly against women, and improperly classified his unauthorized leave from the hospital as LWOC, resulting in Williams's injuries. Williams sought $27,462.60 for medical and hospital services, medicine and miscellaneous expenses and $10 million for pain and suffering; her husband sought $5 million for loss of services. In a decision filed on June 3, 2009, the Court of Claims held that the breach of any duty owed by the State to claimants was not the proximate cause of Williams's injuries—i.e., that "the failure to prevent Joseph from sneaking out of MPC . . . or the failure to classify such elopement as an escape does not support a legal nexus to his assault on Ms. Williams nearly two years later" (23 Misc 3d 1135[A], 2009 NY Slip Op 51103[U] [2009]). Accordingly, judgment was entered on June 10, 2009 dismissing the claim. Claimants appealed.

On May 3, 2011, the Appellate Division, with two Justices dissenting, reversed on the law and the facts, reinstated the claim, found the State liable and remanded the matter for a trial on the issue of damages (84 AD3d 412 [1st Dept 2011]). The majority concluded that "there [was] no doubt that [the State's] carelessness in supervising Joseph was the proximate cause of claimant's injuries"; in particular,

> "despite Joseph's long history of violence, defendant not only created the opportunity for Joseph to escape from its care, but also, by classifying him as LWOC, absolved itself of the obligation to notify the police that a dangerous, violent and mentally unstable individual was loose somewhere in New York City" (id. at 415-416).

The dissenters, agreeing with the trial judge, concluded that the assault was "too remote in time to be proximately caused by" actions or omissions occurring at MPC "almost two years earlier" (id. at 417 [Andrias, J.P., dissenting]). On July 14, 2011, the Appellate Division granted the State's motion for leave to

appeal to us on a certified question of law; namely, whether its order was properly made. We answer the certified question in the negative, and so reverse.

The causal connection between the hospital staff's alleged negligence in July 1993 and Joseph's attack on Williams in July 1995—almost exactly two years later—is simply too attenuated and speculative to support liability. For one thing, there is no way to know whether and no reason to suppose that Joseph, a voluntary patient, would have remained in OMH's care in 1995 even if hospital staff had prevented him from leaving MPC's grounds in 1993, or had notified the police of his absence. And although there was always a risk that Joseph might eventually decompensate and become assaultive once outside a hospital setting—whether he left with or without permission—any number of circumstances arising during the two-year period might have triggered such a change in mental condition. Proximate cause analysis incorporates a "test of temporal duration," which asks if "the occurrence of the injury [was] tied to the claimed negligent act or omission within a reasonable lapse of time" (*Pagan v Goldberger*, 51 AD2d 508, 511 [2d Dept 1976]; *see also* Restatement [Second] of Torts § 433 [c], Comment *f* ["Experience has shown that where a great length of time has elapsed between the actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof"]). Here, the lapse of time was not reasonable. Accordingly, the State was entitled to dismissal of the claim because it established, as a matter of law, that any negligence on its part was not a proximate cause of Williams's injuries (*see Bonomonte v City of New York*, 17 NY3d 866 [2011]).

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum.

Order reversed, etc.