OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
Defendant, an obstetrician and gynecologist, unsuccessfully attempted to abort the pregnancy of plaintiff Mary Koehler. Claiming extensive emotional and psychic injuries, plaintiff commenced this malpractice action. At trial, the case was submitted to the jury on the theory that defendant, departing from his normal practice, had failed to use a sharp curette following application of a suction device. Alternatively, the jury was permitted to premise liability upon defendant’s delay in ascertaining and notifying plaintiff that the pregnancy had not been terminated. Experts for the defense testified that use of either the suction method or the sharp curette would be in accord with customary practice; prevailing practice did not require that both procedures be performed. A verdict was awarded to plaintiffs, and the Appellate Division reversed.
It may well be that defendant, as indicated in his testimony, routinely followed procedures more demanding than those dictated by customary medical practice, and that a failure to adhere to these added precautionary measures in the circumstances of this case would amount to negligence (see, e.g., Toth v Community Hosp. at Glen Cove, 22 NY2d 255, 262-263). But there is no evidence establishing that this omission would in any way cause or enhance the possibility of an unsuccessful abortion. Whether and to what extent use of a sharp curette might contribute to the success of the procedure is not a matter of common knowledge which a lay jury could decide in the absence of expert testimony (see, e.g., 530 East 89 Corp. v *809 Unger, 43 NY2d 776, 777-778). The proof elicited from defendant himself indicated that he used the curette to minimize postoperative complications. Neither he nor any other expert testified that the curette would facilitate the surgical procedure or increase the likelihood of success. Simply put, then, plaintiffs did not demonstrate that the failure to use a sharp curette was a cause-in-fact of the unsuccessful abortion (see, e.g., Prosser, Torts [4th ed], § 41).
The testimony of Dr. Krumholz does not alter this conclusion. As the medical evidence reveals, there is a distinction between an incomplete abortion — where the procedure is generally successful but vestiges of the fetus remain in the uterus —and an unsuccessful abortion. Dr. Krumholz’ testimony was concerned with the incomplete operation. In such a case, use of a sharp curette might help to remove any remnants of fetal tissue which, even if not surgically removed, would normally be expelled by the body in due course. Nowhere did the witness even intimate that the curette could render successful an otherwise unsuccessful abortion. And plaintiff did not claim that the procedure had been incomplete; her theory was that the operation had been a total failure.
Finally, defendant’s delay in notifying plaintiff of the failure of the abortion, while perhaps exacerbating any damage which flowed from the nonsuccess of the procedure, was not shown to be an independent cause of any of plaintiff’s injuries or damages, including those of an emotional or psychic nature. In short, plaintiff simply has not established that her injuries resulted from anything other than the failure of the abortion, regardless of when she received notification. A contrary conclusion on this record, especially with regard to whether earlier notification would have prompted plaintiff to consent to a second abortion, could only be based on sheer speculation. Indeed, plaintiff testified that she could not have endured a second abortion, without any indication that prompt notification would have affected her decision.