WILLIAM F. MONAHAN, Individually and as Executor of MARY E. MONAHAN, Deceased, Appellant, v HAROLD R. WEICHERT, Respondent. (Appeal No. 1.)

WILLIAM F. MONAHAN, Individually and as Executor of MARY E. MONAHAN, Deceased, Appellant, v ST. JOSEPH'S HOSPITAL AND HEALTH CARE CENTER, Respondent. (Appeal No. 2.)

Fourth Department, July 9, 1981

■■■■■■■■■■■■■■■

## APPEARANCES OF COUNSEL

*McCrone & Davis (Jeffrey M. McCrone* of counsel), for appellants.

*Martin, Ganotis & Brown, P. C. (John Ganotis* of counsel), for Harold R. Weichert, respondent.

*Hancock, Estabrook, Ryan, Shove & Hust (Frank Bersani, Jr.,* of counsel), for St. Joseph's Hospital, respondent.

## OPINION OF THE COURT

SCHNEPP, J.

■ In this medical malpractice case we consider primarily the problem of distinguishing the effect of the defendant Dr. Harold R. Weichert's alleged negligence from the natural results of plaintiff William F. Monahan's disease. Trial Term dismissed the complaint against Dr. Weichert at the end of the plaintiff's case concluding that there was insufficient evidence to permit the inference of proximate cause, i.e., any causal connection between defendant doctor's conduct and plaintiff's injury. We reverse and grant a new trial. The proof of proximate cause sufficiently raised issues for determination by the jury.

Plaintiff, who since 1962 had a history of rheumatoid arthritis in a number of joints throughout his body, received medical treatment over the years, consisting of aspirations (removal of fluid from the knees), gold injections and dosages of aspirin and cortisone. Synovectomy operations (removal of the lining of the knee joint, menisci and bony spurs from within the joint) were performed on both knees. To alleviate pain suffered by plaintiff due to his arthritic condition, defendant performed hip operations on plaintiff between 1969 and 1972 which involved installation of prostheses in both his right and left sides. During this time plaintiff used a cane constantly because of the pain in his legs and knees associated with his arthritis. Defendant continued treating plaintiff with the use of periodic aspira-

tions and injections and prescribed a course of physiotherapy which included whirlpool baths and leg weightlifting exercises. In 1970, plaintiff's condition was diagnosed as "markedly progressive rheumatoid destruction of knee joints". Both his knees developed flexion contractures (lack of extension) which defendant described as "fixed flexion deformit[ies] of the knee[s] precluding or obviating full extension". According to plaintiff his "knee would go all the way back, but it wouldn't go forward all the way". Plaintiff testified that in May, 1972 he was told by defendant that a total knee replacement operation would not be feasible but, after indicating that defendant would consider it further, he informed plaintiff that he would be scheduled for surgery. Plaintiff further swore that defendant described neither the nature of the surgery nor the risks involved but stated that the operation would give plaintiff 70% mobility in his knees.

Defendant performed a supracondylar femoral wedge osteotomy on plaintiff's left leg on July 27, 1972 and on the right leg on August 3, 1972. These operations were designed to correct the knee flexion contractures by removing a piece of bone from the femur just above the knee and artificially joining the femur with a plate and screws to form a compensating angle to permit knee flexation. Following surgery plaintiff's legs were placed in plaster casts. When the casts were removed five weeks later plaintiff's legs were stiff and he never regained mobility in either knee despite recommended physiotherapy. Before the 1972 operations Dr. Weichert described plaintiff as suffering from ankylosis or stiffening of the knee joint. In his deposition Dr. Weichert testified that he anticipated that plaintiff, after the surgical intervention, would regain some motion following a course of physiotherapy but that postoperative stiffness is a possibility in any rheumatoid arthritic patient.

Plaintiff offered expert testimony that he has completely ankylosed knees fused between 25 and 30 degrees of flexion, that the condition is permanent and that no further treatment is indicated. Plaintiff's medical expert testified as to pre- and postoperative treatment which, in his opinion, constituted deviations from the acceptable standards of

medical practice. When asked whether these deviations were the "proximate cause" of plaintiff's complete loss of motion in both knees, he responded: "There is no denying that this is a progressive condition, and no one can predict with any accuracy what the situation might be some years into the future but, this was, without question, the proximal cause of his immediate loss of motion in his knees which has never been regained. And, how much time or whether this ever would have happened otherwise is pure conjecture." He agreed that the risk of stiffness in the knee joints was a recognized risk of the type of surgery performed in 1972.

Plaintiff claims that the trial court misinterpreted the testimony of his expert on the issue of proximate cause to mean that it was conjecture whether Dr. Weichert's negligence caused the injury. Defendant, on the other hand, claims that the dismissal was proper since the testimony of plaintiff's own expert failed to establish that plaintiff's injuries resulted from the surgery and that there was insufficient evidence to permit the inference of proximate cause.

In reviewing the dismissal of plaintiff's complaint at the close of his case, the test is whether "there was any rational basis on which a jury could have found for [plaintiff]" *(Rhabb v New York City Housing Auth.*, 41 NY2d 200, 202). In applying the test, plaintiff is entitled to a view of the evidence most favorable to his case *(Parvi v City of Kingston*, 41 NY2d 553; *Rhabb v New York City Housing Auth.*, *supra*, p 202; see *Brown v City of New York*, 47 NY2d 927). In the instant malpractice action, the doctor-patient relationship was not disputed, and it was incumbent upon plaintiff to prove that the defendant doctor violated one of the following three duties: (1) the duty to possess the requisite skill and knowledge as is possessed by the average member of the medical profession in the community in which he practices; (2) the duty to exercise ordinary and reasonable care in the application of that professional knowledge and skill; or (3) the duty to use his best judgment in the application of his knowledge and skill *(Pike v Honsinger*, 155 NY 201, 209-210; *Hale v State*

*of New York*, 53 AD2d 1025; see, also, *Toth v Community Hosp. at Glen Cove*, 22 NY2d 255). The duty of due care is not limited to diagnosis and treatment, but extends to instructions regarding posttreatment care *(Pike v Honsinger, supra*, p 210). No issue is raised that plaintiff's proof is insufficient to establish a prima facie case that defendant violated the duty he owed to plaintiff.

In addition, however, plaintiff must establish that the injuries sustained were caused by the doctor's failure to exercise reasonable care *(Koehler v Schwartz*, 48 NY2d 807). The element of causation provides the essential link between the negligent conduct and its consequences, or "between the harm threatened and the harm done" *(Sewar v Gagliardi Bros. Serv.*, 51 NY2d 752, 759 [FUCHSBERG, J., concurring]).

Causation incorporates at least two separate but related concepts: cause-in-fact and proximate cause. Cause-in-fact refers to those antecedent events, acts or omissions which have "so far contributed to the result that without them it would not have occurred." (Prosser, Torts [4th ed], § 41, p 237; see *Koehler v Schwartz, supra*, p 809.) Ordinarily, this requirement is satisfied if the given act or omission was a substantial factor in producing the resultant injury *(Dunham v Village of Canisteo*, 303 NY 498, 505; *Nastasi v State of New York*, 55 AD2d 724; Restatement, Torts 2d, § 431). It is not sufficient to find a defendant negligent, unless it is further shown that such negligence was the proximate cause of the injuries suffered by a plaintiff *(Dunham v Village of Canisteo, supra*, p 506; see *Ortiz v Kinoshita & Co.*, 30 AD2d 334). "[P]roximate cause is a question separate and apart from that of duty and negligence and it is only when these initial issues are resolved against the tort-feasor that the question of proximate cause arises" *(Dunn v State of New York*, 29 NY2d 313, 318). Proximate cause serves to limit, for legal or policy reasons, the responsibility of an actor for the consequences of his conduct *(Sewar v Gagliardi Bros. Serv., supra*, p 759 [FUCHSBERG, J., concurring]; *Ventricelli v Kinney System Rent A Car*, 45 NY2d 950; *Pagan v Goldberger*, 51 AD2d 508, 509; Prosser, Torts [4th ed], § 41; Prosser, Proximate Cause in California, 38 Cal L Rev 369, 375; see

*Howard v Lecher,* 42 NY2d 109; *Aquilio v Nelson,* 78 AD2d 195, 199).

Proximate cause, a troublesome concept of the law of negligence generally, poses special problems in the field of medical malpractice. The problem is described in one treatise as follows: "Almost every person who receives the services of a physician is sick or disabled when he first goes to the physician. Thus there lurks the ever present possibility that it was the patient's original affliction rather than the physician's negligence which caused the ultimate damage." (1 Louisell and Williams, Medical Malpractice, par 8.07, p 213.)

Ordinarily, expert medical opinion testimony is required to establish proximate cause and make out a prima facie case of medical malpractice unless the causal relationship is readily apparent to the trier of fact *(Hammer v Rosen,* 7 NY2d 376; *Zettler v Reich,* 256 App Div 631, affd 281 NY 729; see *Koehler v Schwartz,* 48 NY2d 807, *supra; Kinch v Adams,* 46 AD2d 467, affd 38 NY2d 792; see, generally, Ann., 13 ALR2d 11).

The precise issue in this case is whether plaintiff's proof on the issue of proximate cause was sufficient as a matter of law to create a question of fact for the jury. "Proximate cause presents a question of fact for the jury 'if varying inferences are possible' and is 'always dependent upon the facts of a particular case, and it is for this reason that the words are beyond definition or conclusive explanation' *(O'Neill v. City of Port Jervis,* 253 N. Y. 423, 433)." *(Lopez v City of New York,* 4 AD2d 48, 52, affd 4 NY2d 738.) The testimony of plaintiff's expert indicates that the loss of motion in plaintiff's knees was caused by the surgery and it could not be determined when or whether this condition would have resulted without the surgery. His opinion was supported by proof that plaintiff's knees were mobile before the surgery, but rigid immediately after the casts were removed. Plaintiff's expert clearly stated: "[T]his [deviation from the acceptable standards of medical practice] was, without question, the proximal cause of his immediate loss of motion in his knees which has never been regained." Although proximate cause cannot be satis-

fied by conjecture and speculation which are no substitute for proof *(Kinch v Adams*, 46 AD2d 467, 469, *supra)*, the instant case involved neither. Here we are concerned with the operation of two independent forces, one being the physician's conduct and the other being the course of plaintiff's illness. To establish a prima facie case plaintiff need not eliminate entirely all possibility that defendant's conduct was not a cause, but only offer sufficient evidence from which reasonable men may conclude that it is more probable that the injury was caused by defendant than that it was not (Restatement, Torts 2d, § 432, subd [2]; § 433B, Comment *b)*. Disputes as to whether conduct is negligent or the proximate cause of an injury are usually best left to the fact finder and here the jury might find that the negligent acts of defendant were the proximate cause of plaintiff's condition (see *Pagan v Goldberger*, 51 AD2d 508, *supra)*. On this record the jury could find that the loss of mobility in plaintiff's knees is attributable to the surgery and defendant would not be free from liability because his conduct merely speeded up the happening of a result that was inevitable in any event *(Kimball v Scors*, 59 AD2d 984, 985; *Jones v City of New York*, 57 AD2d 429, 430; *Kallenberg v Beth Israel Hosp.*, 45 AD2d 177, 180, affd 37 NY2d 719; see *Dunham v Village of Canisteo*, 303 NY 498, 505-506, *supra)*. Thus, even though plaintiff may have eventually developed the loss of mobility in both knees because of the disease, recovery may be allowed to the extent that the negligence of the defendant doctor brought on the condition prematurely. There was proof that the treatment rather than the underlying disease was the immediate cause of plaintiff's loss of mobility. Although a defendant would be entitled to put before the jury testimony intended to exclude plaintiff's pre-existing condition from the damage he suffered, a defendant may not be excused from liability altogether for the direct effects of his negligent conduct and plaintiff's pre-existing condition is not a defense (see *McCahill v New York Transp. Co.*, 201 NY 221, 224).

■ The trial court also dismissed plaintiff's second cause of action for lack of informed consent against Dr. Weichert. This ruling, based on a failure to establish defendant's

negligence as the proximate cause of plaintiff's injury, was error since plaintiff's proof on the issue of proximate cause was sufficient to create a question of fact for the jury.

■ The trial court was correct, however, in dismissing plaintiff's action against defendant hospital, since there was no expert medical testimony establishing a causal link between the hospital's alleged failure to keep proper medical records on plaintiff and plaintiff's injuries. Although plaintiff's expert witness testified that the hospital's records were inadequate, he was unable to formulate an opinion as to whether this was causal to plaintiff's injury.

It is unnecessary to pass on other issues raised on this appeal.

Accordingly, the judgment dismissing the complaint against the defendant Dr. Weichert should be reversed and a new trial granted. The judgment dismissing the complaint against the defendant hospital should be affirmed.

DILLON, P. J., CALLAHAN, DOERR and MOULE, JJ., concur.

Appeal No. 1.—Judgment unanimously reversed, on the law and facts, with costs and a new trial granted.

Appeal No. 2.—Judgment unanimously affirmed, with costs. Same opinion as in *Monahan v Weichert*, Appeal No. 1, 82 AD2d 102, decided herewith.