LORNA GAYLE et al., Appellants, v DANIEL NEYMAN, Respondent.

First Department, January 6, 1983

#### APPEARANCES OF COUNSEL

*Norman H. Dachs* of counsel (*Shayne, Dachs & Stanisci,* attorneys), for appellants.

*John L. A. Lyddane* of counsel (*William W. Haury, Jr.,* with him on the brief; *Martin, Clearwater & Bell,* attorneys), for respondent.

#### OPINION OF THE COURT

FEIN, J.

Plaintiff Lorna Gayle brought this action for malpractice against defendant physician who examined and treated her in 1974, alleging that his failure to perform a pelvic examination and make a proper diagnosis of her condition at that time caused her to have to undergo a hysterectomy two years later and to be unable to bear children. Lorna's husband, Michael, sued for loss of services.

Lorna had consulted defendant, an internist, for some six years before the events pertinent to this appeal. In March, 1974 she telephoned defendant, as she had done on a

number of occasions, complaining of heavy menstrual bleeding. Defendant prescribed over the telephone the female hormone Provera in tablet form for five days. The bleeding stopped three days later, indicating that its cause was functional rather than organic. No office visit or examination was scheduled. Two months later an incident at work caused Lorna to become faint from emotional strain, and she rushed to defendant's office, exhibiting a "racing" heart and shortness of breath. Defendant gave her a general examination and ordered blood tests and a cardiogram. Suspecting thyroid complications, defendant conducted no internal pelvic examination. He thought it was unnecessary and might traumatize his patient. Besides, Lorna had voiced no gynecological complaints. These were the two consultations complained of as alleged malpractice. Plaintiffs alleged that good and accepted medical practice called for a pelvic examination which was not done at that time.

Four months later, in early October, 1974, Lorna visited defendant, complaining of weakness and tired condition. Although Lorna displayed no gynecological symptoms, defendant performed a pelvic examination, not having done so in the past year and a half. Finding abnormal swelling, defendant referred Lorna to a gynecologist (Dr. Tanz), who determined through radiological testing that Lorna had two fibroid tumors in her uterus. Tanz treated Lorna through January, 1975, reporting to defendant that he favored a conservative approach because growth of these benign tumors had "plateaued", because they were not causing any significant problems, and because myomectomy (surgical removal of the fibroids) would be risky due to their location.

Over the next three months Lorna consulted another gynecologist, Dr. Fenton, complaining of increased backache and heavy menstrual bleeding. Because the tumors now appeared to be growing again, Fenton operated in April, 1975, performing a dilation and curettage, a myomectomy, a partial left oophorectomy (removal of a part of the left ovary), and removal of some endometriosis. It was only during the course of this operation that it was discovered for the first time that Lorna had endometriosis. All of

the medical testimony was consistent, to wit, that the existence of endometriosis generally can be discovered only through surgical exploration.

More than eight months later Lorna, again suffering from heavy menstrual periods, consulted still another gynecologist, Dr. Hausknecht, who examined her and concluded that fibroid tumors had recurred. When a prescription of Provera (which he described as "a very, very safe drug" which "does not stimulate the growth of uterine fibroids") failed to check the bleeding, Hausknecht performed a dilation and curettage in February, 1976 which seemed to confirm the recurrence of a fibroid mass. Hausknecht told Lorna that surgery was not presently indicated, but would eventually be necessary because of growth of the tumor and its encroachment on other organs. In April, 1976 Dr. Novak operated on Lorna and observed extensive endometriosis, necessitating a total hysterectomy, including the removal of Lorna's otherwise healthy ovaries. Postsurgical pathological examination also revealed evidence of adenomyosis, a disease necessitating surgical removal via hysterectomy, required irrespective of whether fibroid tumors existed.

The jury returned a verdict of $250,000 for Lorna and $50,000 for her husband, evidently concluding that defendant's failure to conduct a pelvic examination during the first two incidents in 1974 was the proximate cause of the hysterectomy two years later. Defendant's motion to set the verdict aside as excessive and as contrary to the weight of the credible evidence was granted upon the ground that the verdict was "contrary to the evidence presented".

There should be an affirmance. The trial court had the authority to direct judgment in favor of the defendant. CPLR 4401 provides, in pertinent part: "Any party may move for judgment with respect to a cause of action or issue upon the ground that the moving party is entitled to judgment as a matter of law, after the close of the evidence presented by an opposing party with respect to such cause of action or issue".

CPLR 4404 (subd [a]) provides, in pertinent part: "After a trial of a cause of action or issue triable of right by a jury, upon the motion of any party or on its own initiative, the

court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence".

Although the Trial Judge used the phrase "weight of the evidence", it is plain that the Judge was ruling "that plaintiff has failed in the proof required to support a claim of malpractice", an analysis consistent with entering judgment "in favor of a party entitled to judgment as a matter of law" (CPLR 4404, subd [a]). Where a jury verdict is set aside as contrary to the weight of the evidence, a new trial is the appropriate remedy (*Caldwell v Nicolson,* 235 NY 209, 212; *Matter of De Kruyff [MVAIC],* 20 AD2d 775, 776). However, a judgment should be directed for a defendant where the jury's verdict for the plaintiff is incredible as a matter of law (*Jones v Kent,* 35 AD2d 622, 623; cf. *Shane v St. Paul's United Methodist Church of Vanderveer Park,* 56 AD2d 597), or where by no rational process could the jury have arrived at its verdict upon the basis of the evidence before it (*Millens & Sons v Vladich,* 28 AD2d 1045, 1046, affd 23 NY2d 998; cf. *Dowell v Remmer,* 24 AD2d 542, 543). "For a court to conclude as a matter of law that a jury verdict is not supported by sufficient evidence * * * [i]t is necessary to first conclude that there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial." (*Cohen v Hallmark Cards,* 45 NY2d 493, 499; see *McDonald v Metropolitan St. Ry. Co.,* 167 NY 66, 69-70.)

On the facts of this case it is plain that the jury could not have arrived at its verdict upon the evidence before it on any rational basis. "The test is whether the trial court could find 'that by no rational process could the trier of the facts base a finding in favor of the [party moved against] upon the evidence * * * presented.'" (*Wessel v Krop,* 30 AD2d 764, 765, citing *Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245; *Wearever Upholstery & Furniture Corp. v Home Ins. Co.,* 286 App Div 93, 95.) By that test dismissal is warranted here.

The essential facts are not in dispute. It is plain that defendant did not conduct a pelvic examination of the plaintiff Lorna in March and May of 1974 and did not do so until October, 1974 when he observed an abnormality in Lorna's uterus, and referred her to a gynecologist. The record is clear that even if this failure to perform a pelvic examination in March and May of 1974 and in proscribing Provera over the telephone was negligent, this had nothing to do with the existence or later discovery of endometriosis, which required the hysterectomy. There is no evidence that an examination in March or May would have revealed this condition. It is undisputed on this record that at the times involved endometriosis was discoverable only upon exploratory surgery, and that the physicians who did conduct a pelvic examination of Lorna and discovered and later removed the fibroid tumors all advocated delaying surgery. This was so even though they had encountered the fibroid tumors which Lorna alleged defendant should or would have discovered had he conducted a pelvic examination in March or May of 1974. Even plaintiffs' expert conceded that the endometriosis which required the hysterectomy was only discoverable surgically and not upon the basis of a mere pelvic examination. Even if the failure of defendant to perform a pelvic examination was negligent, such negligence did not cause the endometriosis or delay its discovery. The endometriosis was not discovered until Dr. Fenton operated in April of 1975. Neither Doctors Tanz nor Hausknecht, who treated Lorna commencing in October of 1974, found this disease during their examination of her.

Plaintiffs' expert concurred that endometriosis is discoverable only through surgery and curable only by surgical removal. So far as Lorna complains of her inability to bear children because of the hysterectomy, the evidence is undisputed that the presence of the fibroid tumors did not necessarily impede pregnancy. Dr. Tanz encouraged Lorna to attempt conception because future growth of the fibroid tumors might affect her fertility. Neither Doctors Tanz nor Hausknecht detected any desire on Lorna's part to raise a family at the time they treated her. Both noted her use of a contraceptive diaphragm at the time and were aware of her

medical history, which included two induced abortions. There was no proof that defendant's failure to conduct a pelvic examination in March and May of 1974 delayed the discovery of the endometriosis or its surgical removal, or was in any way causally related to plaintiff's inability to have children by reason of the hysterectomy required because of the endometriosis.

It is well settled that there must be a causal connection between negligence and the resulting injury (*Holzberg v Flower & Fifth Ave. Hosps.*, 39 AD2d 526, affd 32 NY2d 716; *Foley v Gillick*, 39 AD2d 546, mot for lv to app den 31 NY2d 643). Plainly there is no causal connection between defendant's alleged malpractice in failing to conduct a pelvic examination and Lorna's subsequent hysterectomy. There is no showing that the alleged negligence was a proximate cause of the injury of which plaintiffs complain.

The verdict should have been set aside and judgment directed for the defendant as a matter of law. Upon that basis the judgment, Supreme Court, New York County (BLANGIARDO, J.), entered June 8, 1981 in favor of the defendant dismissing plaintiffs' complaint after trial, should be affirmed, with costs.

SANDLER, J. P., MARKEWICH, BLOOM and MILONAS, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 8, 1981, unanimously affirmed. Respondent shall recover of appellants $75 costs and disbursements of this appeal.