*784 OPINION OF THE COURT
Albert M. Rosenblatt, J.
Plaintiff moves for an order setting aside the jury’s verdict as "improper and contrary to the weight of the credible evidence”.
The jury found for defendant doctor, upon an action by plaintiff for injuries she sustained in a operating room at defendant Highland Hospital[1] in Beacon, New York, on July 28, 1979.
The plaintiff’s motion is rooted in her assertion that the verdict was the result of the court’s instructing the jury under medical malpractice standards rather than under simple negligence.
Plaintiff had been injured in an automobile accident and was brought into defendant hospital’s operating room where defendant Dr. Andrew A. Dahl, a surgeon, was to perform an operative procedure upon a laceration near plaintiff’s eye. A fire erupted in the operative field, and plaintiff’s nose and lips were burned. The fire was extinguished and the operation was completed shortly thereafter.
The plaintiff chose to rely exclusively on res ipsa loquitur. Pleading her case in common-law negligence, she produced no medical or expert testimony in connection with the surgeon’s actions, the procedure used, the technical and operational properties of cauteries, or how the igniting occurred. The testimony established that Dr. Dahl used a cautery device and that oxygen was being administered. The plaintiff, however, did not produce any scientific or expert testimony as to the issue of combustibility. The defense, however, adduced undisputed medical expert testimony to the effect that cauterization, with oxygen present, was a common, medically accepted practice at the time of the operation.
Plaintiff has sought in her pleadings to sidestep medical malpractice criteria by abjuring a medical malpractice cause of action in favor of one couched strictly in negligence.
The jury, in having to determine whether Dr. Dahl’s actions were reasonable, could not do so in a vacuum. Relatively few people know what cauterization is, and know even less about the proper use and properties of cauteries in surgical procedures.
In the complaint, plaintiff alleged that defendants under *785 took to treat the plaintiff at the hospital with "all due skill, care and judgment appropriate to the provision of such services”. Clearly, these are medical services; it was an operation, and is to be distinguished from ordinary acts of alleged negligence.
Plaintiff also alleged, inter alia, that the cautery was negligently used by the defendant doctor and the defendant hospital, that the said defendants allowed oxygen into the field, that the hospital hired incompetent employees, and that defendants both failed to use reasonable prudence under "the controlling circumstances”. The circumstances were, of course, a medical operation and the standard of care must be measured in terms of medical knowledge, practice, and technique.
The doctor’s actions — and the hospital’s — involved highly technical procedures, sophisticated equipment and systems, well beyond ordinary lay understanding. An operation, for these purposes, bears no resemblance to simple acts of negligence committed at hospitals such as spilling liquids, mislabeling bottles, or failing to have bed sideboards. The actions of the defendants here involved operative procedures, and how cauteries were to be used. Plaintiff presented no evidence as to the acceptable medical practice in that regard, or any deviation therefrom. It all came from defendant, and the jury was free to believe what they heard. Clearly, Dr. Dahl was "in the process of exercising his profession and utilizing the skills which he has been taught in examining, diagnosing, treating or caring for another person”, namely, acts which involve medical practice (or malpractice) rather than simple negligence (Twitchell v MacKay, 78 AD2d 125, 128).
The distinction between negligence and malpractice is important, and involves, on the one hand, conduct which may be assessed on the basis of everyday experience, and conduct which, on the other hand, entails matters of medical expertise, practice, or knowledge (Miller v Albany Med. Center Hosp., 95 AD2d 977). Because most laymen do not know the properties of cauteries, their potential hazards, their proper use, or the medical purposes, let alone the dynamics of combustibility and the circumstances under which cauterization may be used in and out of oxygen fields during surgery, the matter cannot be left to lay conjecture. The jury would have no greater frame of reference than in a case involving a claimed misdiagnosis or improper incision.
The case at bar is similar to Koehler v Schwartz (48 NY2d *786 807, 808) in which the court held that plaintiffs complaint was properly dismissed for failure of proof as to causation, in that the question of "[wjhether and to what extent use of a sharp curette might contribute to the success of the procedure is not a matter of common knowledge which a lay jury could decide in the absence of expert testimony”. At bar, plaintiff produced none; all of the expert testimony which was produced was antithetical to plaintiffs claim. Unlike Koehler (supra), however, plaintiffs complaint was not dismissed but was tendered to a jury, under res ipsa loquitur, circumstantial evidence, and medical malpractice instructions.
Because allegations of negligence in the rendering of medical care involve the exercise of skill and the use of medical technique (Twitchell v MacKay, supra), proof of negligence must be supported by expert testimony and not left to the realm of jury conjecture in a wholly alien field (Sawyer v Dreis & Krump Mfg. Co., 67 NY2d 328; McDermott v Manhattan Eye, Ear & Throat Hosp., 15 NY2d 20; Benson v Dean, 232 NY 52). The plaintiff may not, on the facts of this case, brush aside the highly developed body of medical malpractice law by coy or improper pleading.
Thus, where a case, as the one at bar, goes beyond simple negligence at a hospital, e.g., leaving a light bulb under the sheets (Dillon v Rockaway Beach Hosp. & Dispensary, 284 NY 176), or engaging in any of the acts of ordinary negligence, as catalogued in Twitchell (78 AD2d, at p 127), and entails the very essence of a physician’s actions and methods in performing a surgical procedure, a determination of what is or is not appropriate cannot be made in the abstract any more than can the actions of an astronaut or computer technician who selects one computer key rather than another. Accordingly, when defendant doctor was called upon, as alleged in plaintiffs complaint, to act with due skill, care, and judgment, and if as alleged, he "carried out his function in a negligent or improper fashion * * * the legal concept for any malfeasance or misfeasance by defendant would quite properly fall under the label of medical malpractice (see Calhoun v Gale, 29 AD2d 766)” (Twitchell v MacKay, 78 AD2d, at p 129).
The plaintiff may not miscast the case so as to avoid the appropriate criterion, namely, the "reasonably prudent physician” as opposed to the "reasonably prudent man”. Indeed, it would have been improper to instruct the jury under the latter standard (Sanabria v City of New York, 42 AD2d 615).
*787 The court has consulted the record on appeal in Sanabria (supra). That case involved a claim of medical misdiagnosis and a failure to perform neurological tests. As to the hospital, the court charged the jury that the hospital was held to the degree of care customarily exercised by hospitals in the community, but as to the doctor, the court charged (Sanabria v City of New York, supra), the straight negligence (reasonably prudent man) standard as opposed to the reasonably prudent physician standard. This was held to be error, and the plaintiff in our case was asking the court to apply the same, erroneous standard.
The defendant doctor, at bar, argued that the case should have been dismissed, on the law, because a jury would have to speculate as to the cause of the ignition, and in the absence of expert testimony there was no fact question for jury consideration. While this position may be arguable and perhaps even supported by case law (Weiss v Zuckerman, 114 AD2d 895), the court was of the view that the case should go to the jury and that res ipsa loquitur should be charged, at plaintiff’s request, inasmuch as the necessary elements for res ipsa loquitur were at least arguably present, i.e., there was a permissible inference of negligence (Gravitt v Newman, 114 AD2d 1000; Ebanks v New York City Tr. Auth., 118 AD2d 363).
RES IPSA LOQUITUR
The most recent exposition on the point is from the Court of Appeals in Dermatossian v New York City Tr. Auth. (67 NY2d 219; see also, Pollack v Rapid Indus. Plastics Co., 113 AD2d 520; Ebanks v New York City Tr. Auth., supra) in which the three conditions (that the event is of a kind that ordinarily does not occur without someone’s negligence; exclusivity of control by defendant, and blamelessness on plaintiff’s part) are set forth. The Court of Appeals in discussing res ipsa loquitur said this: "Res ipsa loquitur does not create a presumption in favor of the plaintiff but merely permits the inference of negligence to be drawn from the circumstance of the occurrence * * * The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury, and the jury may — but is not required to — draw the permissible inference” (67 NY2d, at p 226; emphasis added).
At bar, the plaintiff presented enough to get to the jury, and the jury, having been instructed on res ipsa loquitur could *788 have but was not required to draw the permissible inference. (Dermatossian v New York City Tr. Auth., supra.)
Accordingly, the plaintiff received not only the medical malpractice charge, but res ipsa loquitur as well, much the same as a court, in a nonmedical case, would charge both negligence and res ipsa loquitur (Weeden v Armor Elevator Co., 118 AD2d 849).
So far as exclusiveness of control is concerned, the doctor argued that he was not in exclusive control of the circumstances because all of the equipment (supplies, sponges, towels, preparation solutions, and, above all, the cautery, oxygen, and operative drapes) were the defendant hospital’s. This was undisputed. Nevertheless, the court charged that defendant Dr. Dahl was in charge of the managerial aspects of the operation. Inasmuch as the instrumentalities were undisputedly supplied by the defendant hospital and the operation was under the doctor’s managerial control, the court charged res ipsa loquitur as to both defendants (Schroeder v City & County Sav. Bank, 293 NY 370; Fogal v Genesee Hosp., 41 AD2d 468) with an opportunity to assign percentages of fault as between the doctor and the hospital. Thus, a res ipsa loquitur charge was given (cf. Walker v State of New York, 111 AD2d 164) despite defendant’s objection that res ipsa loquitur was inappropriate because the hospital supplied the instrumentalities. The jury, in finding no negligence as against the defendant doctor, obviously concluded that the permissive inference against him was not supported by proof.[2]
This court cannot state that there was " 'no valid line of reasoning * * * which could possibly lead rational men to the conclusion reached by the jury’ ” (Gelhaus v Pearl Riv. School Dist., 111 AD2d 149), or that the verdict is "unsupported by any fair evaluation of the evidence” (Lunn v County of Nassau, 115 AD2d 457, 458; see also, Nicastro v Park, 113 AD2d 129 [Lazer, J.]).
In short, there are many ways in which the accident could have happened other than by negligence on the defendant doctor’s part. The role of the defendant hospital, its nurses, the hospital equipment, and the integrity of its equipment (cf. Smith v Squire Homes, 38 AD2d 879) cannot be discounted. *789 There was simply a failure of proof, as against the uncontradicted testimony that the defendant doctor’s actions were in all respects consonant with accepted medical practices.
The case was tendered to the jury under the proper (medical) negligence standard, coupled with instructions as to res ipsa loquitur and circumstantial evidence both of which were charged, at plaintiffs urging and over defendant’s objection.
For the reasons expressed, the court finds no basis to disturb the jury’s verdict, and denies plaintiff’s motion.

. Plaintiff released the hospital just before the trial began.

. The jury did not reach the question of defendant hospital’s liability. Having found no liability against the defendant doctor, the jury was (by consent) instructed to go no further because the defendant hospital was no longer in the case, having been released by plaintiff, before trial.