OPINION OF THE COURT
Edwin Margolis, J.
Following trial of this medical malpractice action, both plaintiffs and defendants made several posttrial motions, pursuant to CPLR 4404 (a), to set aside, revise or amend the jury verdict. At trial, plaintiffs had sought to prove that plaintiff Ellen Hoffson (hereinafter referred to as plaintiff)[1] began receiving treatment from defendants in January 1980 for hair loss (androgenic alopecia) and that, at that time and at all times prior to January 7, 1981, she had no disfiguring scars on her face. Plaintiff further sought to establish that on January 7, 1981, without having been seen or diagnosed by a physician *413 on that date and without plaintiff having given her informed consent to such procedure, Nurse Burke negligently performed an incision and drainage of three acne cysts and removal of blackheads on plaintiff’s face causing the formation of three disfiguring, permanent depressed scars. According to plaintiff, the defendants were liable for her resulting injuries because their acts constituted the unauthorized practice of medicine, failure to obtain informed consent and medical malpractice.
Defendants attempted to prove that plaintiff had been diagnosed by Dr. Kalman in January 1980 as having acne and that on January 7, 1981, when plaintiff was in the office for a scalp treatment and requested advice or treatment of her facial condition, Nurse Burke properly and in a nonnegligent manner performed the incision and drainage of three acne cysts and removal of blackheads after the procedure had been properly ordered by Dr. Kalman. According to defendants, performance of such a procedure by a nurse trained in dermatological procedures, with the permission and consent of a physician, was within the bounds of good and accepted medical practice and Nurse Burke properly obtained plaintiff’s consent to the procedure. Defendants also sought to prove that the scars on plaintiff’s face could not have resulted from or been produced by the procedure performed by Nurse Burke but, rather, were self-induced by plaintiff’s picking at her face (neurotic excoriation) and/or resulted from plaintiff’s failure to obtain prompt medical treatment when the incision sites became infected.
Because plaintiffs invoked several different theories of negligence, the court directed the jury to render a general verdict accompanied by written answers to interrogatories. (Bell v New York City Health & Hosps. Corp., 90 AD2d 270; Deso v Albany Ladder Co., 26 AD2d 182.) The jury determined that Nurse Burke had not engaged in the unauthorized practice of medicine in performing the incision and drainage. With respect to the issue of informed consent, the jury determined that Nurse Burke did not obtain plaintiff’s informed consent to the procedure but that, had the requisite information been provided, a reasonable person would not have refused to consent to the procedure. They further determined that Nurse Burke was not negligent in the manner in which she performed the procedure but that the defendant doctors failed to exercise their best judgment and to use reasonable care in their treatment of plaintiff. Determining that both the procedure performed by Nurse Burke and plaintiff’s own negligence *414 were proximate causes of plaintiff’s injury, the jury apportioned culpability as follows: defendants 37%, plaintiff 63%. The jury set the amount of total damages at $395,000.
The court makes the following rulings on the parties’ post-trial motions.
I. Plaintiffs motion to set aside the jury’s finding that Nurse Burke did not engage in the unauthorized practice of medicine by performing the incision and drainage procedure on three pimples (acne cysts). (Interrogatory No. 1): Denied. The jury reasonably found that Nurse Burke’s actions on January 7, 1981 constituted the lawful practice of nursing (Education Law § 6902 [1]; § 6901), which is defined, in pertinent part, as "diagnosing and treating human responses to actual or potential health problems through such services as * * * executing medical regimens prescribed by a licensed or otherwise legally authorized physician or dentist.” The court accepts the testimony of defendants’ expert that it is an accepted practice in the field of dermatology for a properly trained nurse to perform an incision and drainage of acne cysts when directed to do so by a physician. (See also, Becker v City of New York, 2 NY2d 226 [a properly trained nurse may execute medical regimens that involve making minimal punctures in the skin].) There was unequivocal testimony by defendant physicians and by Nurse Burke herself that she had been trained to perform the procedure in question, that she had performed it on many occasions, and that she was directed by Dr. Kalman to perform it on plaintiff. Under these circumstances, the jury reasonably found that she did not engage in the unauthorized practice of medicine.
II. Plaintiff’s motion to set aside the jury’s finding on informed consent (interrogatory No. 4) on the ground that there was no effort by a physician to obtain informed consent. Denied. Plaintiff asserts, but offers no authority for such assertion, that a nurse may not act as a physician’s agent in obtaining informed consent. Nothing in Public Health Law § 2805-d expressly precludes the use of an agent to provide information to a patient and to obtain that patient’s consent. While no New York case has directly addressed the issue, there is discussion in Brandon v Karp (112 AD2d 490, 492) suggesting that if a nurse were to provide improper information in the course of obtaining the necessary consent, the result would be to make her principal liable under the statute.
A review of case law from other States has revealed only *415 one case directly on point. A Pennsylvania intermediate appellate court held that the critical inquiry is "the scope of the information which plaintiff had been given, rather than the identity of the person making the communication.” (Bulman v Myers, 321 Pa Super 261, 467 A2d 1353, 1355; emphasis added.) We note also discussion in Bass v Barksdale (671 SW2d 476, 488 [Tenn App]) indicating that the employer of a nurse would be liable if the nurse failed to properly inform the patient of risks inherent in a specific procedure. In the instant case, the court charged the jury that a nurse trained in obtaining informed consent to a particular procedure could act as an agent for the treating physician, and the court now adheres to that interpretation of the law.
In any event, plaintiff’s argument on this point is irrelevant, since the jury found that Nurse Burke, acting on behalf of her principal, failed to properly obtain informed consent (interrogatory No. 3) but that if the necessary information had been given, a reasonably prudent person in the patient’s position would not have declined the procedure (interrogatory No. 4), and thus no liability could ensue (Public Health Law § 2805-d [3]).
III. Defendants’ motion to set aside the verdict of the jury on the ground that plaintiffs failed to establish that the negligence of defendant physicians was the proximate cause of plaintiff’s injuries. Granted. The verdict of a jury may not be set aside if there is any rational basis for the conclusion reached by the jury. (Kozlowski v City of Amsterdam, 111 AD2d 476.) "[I]f the verdict is one which reasonable men could have rendered after receiving conflicting evidence,” it must be upheld. (Harris v Armstrong, 97 AD2d 947, affd 64 NY2d 700; see also, Kavanaugh v Nussbaum, 129 AD2d 559; Slocum v Solomon, 84 AD2d 946.) However, where the record does not provide support for the jury’s finding or present any issue of fact as to a necessary element of liability, the verdict must be set aside as a matter of law. (Monahan v Weichert, 82 AD2d 102, 109; Foley v Gillick, 39 AD2d 546, 547; Randolph v City of New York, 117 AD2d 44; Dorsey v Knickerbocker Hosp., 26 AD2d 541.)
In the instant case, the jury found that the defendant physicians were guilty of malpractice. There was consistent, authoritative testimony by medical experts that it was a breach of defendants’ professional duty for Nurse Burke to be directed to perform the incision and drainage procedure when the condition being treated had not been carefully examined *416 or diagnosed by a physician. Prescribing treatment, particularly invasive treatment, for a condition which the physician had only noted in passing one year earlier but never previously examined or treated (and which the physician did not even view on the day of treatment) would appear to be a fundamental and serious breach of the physician’s duty to exercise ordinary, reasonable care in treating his patients. (Monahan v Weichert, 82 AD2d 102, 105, supra.) This finding is not seriously challenged by defendants.
Nor do defendants seek to directly dispute the jury’s conclusion that the procedure itself was a proximate cause of plaintiffs injury. (Interrogatory No. 7.) There was no affirmative testimony or other evidence presented at trial to establish that the three depressed scars were anything other than a direct result of Nurse Burke’s incision of the three cysts on plaintiff’s face. If there had been negligence in the manner the procedure had been performed or if it had been unwarranted by plaintiff’s condition (see, e.g., Lipsius v White, 91 AD2d 271), liability would ensue unless it were established that plaintiff’s own actions were the sole cause of the infection and scarring.
Rather, defendants take issue with the jury’s finding, which is implicit in the verdict (Brown v City of New York, 63 AD2d 635, later appeal 47 NY2d 927), that the negligence of defendant physicians was a proximate cause of plaintiff’s injuries.[2] Careful review of the evidence presented at trial and of the applicable law reveals that there was no evidence from which the jury could have reasonably concluded that the negligence of the defendant physicians was a legally sufficient proximate cause of plaintiff’s injuries.
Proximate cause is uniquely a question of fact for the jury when varying inferences are possible from the evidence and testimony. (Ventricelli v Kinney Sys. Rent A Car, 45 NY2d 950; Monahan v Weichert, 82 AD2d 102, 107, supra, citing O’Neill v City of Port Jervis, 253 NY 423, 433.) In the instant case, this means that there must have been some testimony or other evidence from which the jury could have reasonably concluded that the defendant physicians’ negligent act was a substantial factor in bringing about the injury to plaintiff.
*417 When the negligent act is an omission — here, the doctors’ failure to adequately examine and diagnose plaintiff prior to ordering the incision and drainage — plaintiff has the burden of establishing that the negligence caused or enhanced the possibility of an unsuccessful outcome. (Koehler v Schwartz, 48 NY2d 807; Christopher v St. Vincent’s Hosp. & Med. Center, 121 AD2d 303; Amsler v Verrilli, 119 AD2d 786; Krapivka v Maimonides Med. Center, 119 AD2d 801; Gayle v Neyman, 91 AD2d 75; Lipsius v White, 91 AD2d 271, supra.)
As in cases where the negligence is of a more affirmative nature (e.g., performing on operation improperly), the plaintiff must offer evidence from which reasonable persons could conclude that it was "more probable than not” that the injury would not have occurred but for the negligence of the doctor. (Mortensen v Memorial Hosp., 105 AD2d 151, 158; Mertsaris v 73rd Corp., 105 AD2d 67, 83; Monahan v Weichert, 82 AD2d 102, supra.)
Plaintiff argues that the jury must have concluded that the procedure would, more likely than not, have never occurred had Dr. Kalman or another physician seen the patient. If such a conclusion could be supported by any testimony or other evidence presented at trial, the jury’s verdict must stand. However, there was no such testimony or evidence.
When viewed in the light most favorable to plaintiff, the testimony of plaintiff’s medical experts established only that there are certain types of cysts, other than normal acne cysts, for which incision and drainage would be contraindicated and that plaintiff’s scars could theoretically have resulted from an incision of at least one of those other types of cysts. However, there was absolutely no evidence introduced from which the jury or any reasonable person could have concluded that the condition which plaintiff presented on January 7, 1981 was anything other than typical acne. There was substantial evidence that the condition was simple acne. Plaintiff described herself as having acne on occasion; Dr. Kalman made notes in 1980 indicating that plaintiff exhibited mild acne; Nurse Burke, an experienced dermatological nurse who viewed the cysts closely, concluded that they were acne cysts; and the experts agreed that the resultant scars were consistent with those of acne cysts which were incised and became seriously infected. Dr. Epstein also noticed acne on plaintiff’s face when he examined her 42 days after the procedure. Plaintiff does not dispute that infection is a known risk and complication of *418 any invasive procedure, and there was also no dispute that incision and drainage is a common and recommended dermatological procedure which is routinely performed on patients who seek treatment for acne.
The inescapable conclusion is that, had Dr. Kalman not been negligent, he would have, after a thorough examination of plaintiffs face, issued exactly the same order to Nurse Burke (or performed the same procedure himself). Thus, his negligence in failing to examine plaintiff had no role in bringing about the bad result of the procedure. More to the point, in view of the motion before us, there was nothing presented to the jury that would support an inference that Dr. Kalman would not have ordered the procedure if he had examined plaintiff or that the outcome would have been any different if the procedure were ordered after proper examination. The fact that there are certain types of cysts for which the procedure would not be indicated is irrelevant in the absence of some evidence that plaintiffs cysts were those types of cysts and not acne cysts. The only evidence adduced at trial was that plaintiffs three cysts were acne cysts for which incision and drainage was the proper procedure.
It is true, as plaintiffs also assert, that a doctor must render an informed medical opinion, based on careful examination, and/or other legitimate intelligence, to be protected from mistakes that are mere errors in professional judgment. (See, Huntley v State of New York, 62 NY2d 134, 137; Bell v New York City Health & Hosps. Corp., 90 AD2d 270, 281; Pigno v Bunim, 43 AD2d 718.) Here, however, Dr. Kalman’s order was based on some — if inadequate — intelligence[3] and, more importantly, there was no showing that his judgment was medically unsound.
For the jury to conclude that, more probably than not, the procedure would not have been performed if Dr. Kalman had examined his patient (i.e., if there had been no negligence) would, on this record, have required impermissible conjecture and speculation on the part of the jury. (Monahan v Weichert, 82 AD2d 102, 108, supra.) The mere possibility, no matter how slight, that the plaintiff would not have been injured if there had been no negligence, is simply not sufficient. (Mortensen v Memorial Hosp., 105 AD2d 151, 158, supra.)
Accordingly, defendants’ motion to set aside the jury’s ver *419 diet on the ground that, as a matter of law, there was insufficient evidence to establish that the negligence of defendant physicians was a proximate cause of plaintiffs injuries is granted, and the complaint is dismissed. In view of this ruling, the court does not address the plaintiffs motion with respect to the finding of contributory negligence or defendants’ motions on the issue of damages.

. The action of Gary Hoffson is derivative in nature.

. In retrospect, the court acknowledges that an additional interrogatory requiring the jury to causally link the doctors’ negligence to the plaintiffs injuries would have been helpful. The absence of such an interrogatory may well have prejudiced defendants, but, certainly, not plaintiffs. It should be noted that neither party proposed such an interrogatory.

. He had previously observed plaintiffs acne and Nurse Burke communicated her observations of the cysts.