Lopes v Lenox Hill Hosp. (2019 NY Slip Op 03328)





Lopes v Lenox Hill Hosp.


2019 NY Slip Op 03328


Decided on May 1, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 1, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
JOSEPH J. MALTESE, JJ.


2017-00416
 (Index No. 17634/13)

[*1]Ana Lopes, et al., appellants, 
v
Lenox Hill Hospital, respondent, et al., defendant.


Morton Povman, P.C., Forest Hills, NY (Bruce Povman of counsel), for appellants.
Rubin Sheeley Paterniti Gonzalez Kaufman, LLP, New York, NY (Juan C. Gonzalez of counsel), for respondent.



DECISION & ORDER
In an action to recover damages for medical malpractice, etc., the plaintiffs appeal from an order of the Supreme Court, Queens County (Kevin J. Kerrigan, J.), entered December 8, 2016. The order granted the motion of the defendant Lenox Hill Hospital pursuant to CPLR 4404(a) to set aside a jury verdict in favor of the plaintiff and for judgment as a matter of law dismissing the complaint insofar as asserted against it.
ORDERED that the order is affirmed, with costs.
On January 21, 2013, the plaintiff Ana Lopes, who was approximately six weeks pregnant, presented to the defendant Lenox Hill Hospital (hereinafter the Hospital) with vaginal bleeding and severe pain. At the Hospital, physicians ordered a serum beta human chorionic gonadotropin level test (hereinafter beta hCG test) and sent Lopes for an ultrasound examination to aid in the differential diagnosis of intrauterine pregnancy, ectopic pregnancy, or recent miscarriage. A radiology resident at the Hospital issued a preliminary report following the ultrasound examination indicating that there was a "single intrauterine gestation." The Hospital discharged Lopes on January 21, 2013, and instructed her to follow up with her obstetrician/gynecologist (hereinafter OB/GYN).
The next day, January 22, 2013, Lopes went to her OB/GYN, the defendant Saul Stromer. Stromer, who had received an oral report from another OB/GYN that the preliminary report from the Hospital's radiology resident indicated that Lopes had an intrauterine gestational sac, drew blood from Lopes and ran a beta hCG test. Based on the oral report about the preliminary report from the Hospital and Lopes's statement to him that she believed she had "passed her pregnancy," Stromer told Lopes that she was having a miscarriage.
Also on January 22, 2013, an attending radiologist at the Hospital reviewed the results of Lopes's ultrasound examination from the previous day, and issued an amended report, which stated that an intrauterine gestational sac was "not certain." The amended report stated: "Recommend correlation with serum beta-hCG levels and repeat ultrasound exam in one week."
On February 1, 2013, Stromer sent Lopes for an ultrasound examination, which did not show a gestational sac in the uterus and which, Stromer believed, was consistent with Lopes [*2]having had a miscarriage. On March 4, 2013, Lopes went to Forest Hills Hospital (hereinafter Forest Hills), where she was diagnosed with an ectopic pregnancy in her fallopian tube. Doctors at Forest Hills performed surgery for a ruptured ectopic pregnancy and removed Lopes's left fallopian tube.
Lopes, and her husband suing derivatively, commenced this action against the Hospital and Stromer. The matter proceeded to a jury trial. The parties disputed whether the Hospital had informed Stromer about the amended report. The verdict sheet asked the jury to determine, inter alia, (1) whether the Hospital's attending radiologist communicated his interpretation of the results of Lopes's ultrasound examination (hereinafter the January sonogram)to Stromer and, if not, (2) whether the Hospital departed from good and accepted medical practice by not communicating the attending radiologist's interpretation of the January sonogram to Stromer. Only if the jury found that the Hospital's attending radiologist had communicated his interpretation of the January sonogram to Stromer was the jury to determine whether Stromer had departed from good and accepted practice in his treatment of Lopes. The jury returned a verdict finding that the Hospital had departed from good and accepted medical practice by failing to communicate the attending radiologist's interpretation of the January sonogram to Stromer, and that this departure was a proximate cause of Lopes's injuries. Since the jury did not find that the attending radiologist's interpretation of the January sonogram had been communicated to Stromer, the jury did not reach the issue of whether Stromer departed from good and accepted medical practice. The Hospital moved pursuant to CPLR 4404(a) to set aside the jury verdict and for judgment as a matter of law dismissing the complaint insofar as asserted against it. The Supreme Court granted the motion. The plaintiffs appeal.
Pursuant to CPLR 4404(a), "the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence" (Ramirez v Mezzacappa, 121 AD3d 770, 771-772). The "setting aside of a jury verdict as a matter of law and the setting aside of a jury verdict as contrary to the weight of the evidence involve two inquiries and two different standards" (id. at 772; see Cohen v Hallmark Cards, 45 NY2d 493, 498).
Although the Supreme Court used the phrase "weight of the evidence" in considering the Hospital's motion, it is apparent that the court held that the only evidence the plaintiffs presented on the issue of proximate cause was legally insufficient (see Killon v Parrotta, 28 NY3d 101, 108; Schaedtler v Schaedtler, 66 AD3d 864, 865; Gayle v Neyman, 91 AD2d 75, 78). A motion pursuant to CPLR 4404(a) "to set aside a jury verdict and for judgment as a matter of law will be granted only if there is no valid line of reasoning and permissible inferences which could possibly lead a rational jury to the conclusion reached on the basis of the evidence presented at trial" (Hollingsworth v Mercy Med. Ctr., 161 AD3d 831, 832; see Killon v Parrotta, 28 NY3d at 108). Because we find that there is no valid line of reasoning and permissible inferences which could possibly lead a rational jury to conclude that the Hospital's inactions were a substantial factor in causing the plaintiffs' injuries, we affirm (see Gayle v Neyman, 91 AD2d at 78; cf. Killon v Parrotta, 28 NY3d at 108; Hollingsworth v Mercy Med. Ctr., 161 AD3d at 832).
"In order to establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries" (Stukas v Streiter, 83 AD3d 18, 23; see Hollingsworth v Mercy Med. Ctr., 161 AD3d at 832; Gaspard v Aronoff, 153 AD3d 795, 796). To establish proximate cause in a medical malpractice case, a plaintiff must present "sufficient medical evidence from which a reasonable person might conclude that it was more probable than not that the defendant's departure was a substantial factor in causing the plaintiff's injury" (Gaspard v Aronoff, 153 AD3d at 796). " Generally, expert testimony is necessary to prove a deviation from accepted standards of medical care and to establish proximate cause'" (id. at 796, quoting Semel v Guzman, 84 AD3d 1054, 1055). " A plaintiff's evidence of proximate cause may be found legally sufficient even if his or her expert is unable to quantify the extent to which the defendant's act or omission decreased the plaintiff's chance of a better outcome or increased the injury, as long as evidence is presented from which the jury may infer that the defendant's conduct diminished the plaintiff's chance of a better outcome or increased [the] injury'" (Gaspard v Aronoff, 153 AD3d at [*3]796-797, quoting Semel v Guzman, 84 AD3d at 1055-1056).
On its motion and on appeal, the Hospital argues that although its failure to communicate the attending radiologist's interpretation of the January sonogram to Stromer was a departure from the accepted standard of care, the jury's finding against it as to proximate cause was not based on legally sufficient evidence but, rather, was based on speculation (see Katz v St. Francis Hosp., 110 AD3d 766, 769).
At trial, the plaintiffs' expert OB/GYN, Joseph Finkelstein, testified that the attending radiologist's interpretation of the January sonogram, which stated that an intrauterine gestational sac was "not certain," made an ectopic pregnancy more likely and should have changed Stromer's treatment of Lopes. Finkelstein opined that if Stromer knew of the attending radiologist's interpretation, Stromer should have ordered serial beta hCG tests and serial sonograms for Lopes to determine whether Lopes had an ectopic pregnancy, which then could have been treated with medication prior to rupturing. Stromer testified that he was not informed of the attending radiologist's interpretation that an intrauterine gestational sac was not certain until "years later" in connection with this litigation. Nevertheless, Stromer testified that even if he had been told of the attending radiologist's interpretation, he would not have changed his care and treatment of Lopes. Stromer testified that the ultrasound performed on February 1, 2013, 11 days after the ultrasound performed at the Hospital, was "10 times better" than an ultrasound performed by the Hospital. He testified that it was performed by a provider that specialized in obstetrics, and it did not reveal an ectopic pregnancy. Therefore, the attending radiologist's interpretation of the earlier ultrasound would not have changed his opinion that Lopes had an intrauterine miscarriage. Stromer further testified that he did not believe that the accepted standard of care required him to perform subsequent beta hCG tests after receiving the results of the February 1, 2013, ultrasound or any additional followup beyond the followup that he provided. Consequently, there is no evidence in the record from which the jury could have rationally concluded that if the attending radiologist's interpretation had been communicated to Stromer, Stromer would have treated Lopes differently (see Manganiello v Ahmed, 130 AD3d 583, 586-587; Katz v St. Francis Hosp., 110 AD3d at 769; Rampe v Community Gen. Hosp. of Sullivan County, 241 AD2d 817, 819). Accordingly, we agree with the Supreme Court's determination granting the Hospital's motion to set aside the jury verdict and for judgment as a matter of law.
MASTRO, J.P., AUSTIN, MILLER and MALTESE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court